JOHN F. DEVINE, Admr., Appellee, *vs.* THE FEDERAL LIFE INSURANCE COMPANY, Appellant.

*Opinion filed April 19, 1911—Rehearing denied June 7, 1911.*

1. SPECIAL INTERROGATORIES—*rule in determining whether special finding is inconsistent with general verdict.* In determining whether a special finding is so inconsistent with the general verdict that the latter must be held to be controlled by the former the Supreme Court cannot look at the evidence.

2. SAME—*inconsistency between, the special finding and general verdict must be irreconcilable.* All reasonable presumptions will be indulged in favor of the general verdict while nothing is presumed in aid of the special findings, and to warrant the court in finding that the general verdict is not consistent with the special findings the inconsistency must be so irreconcilable as to be incapable of removal by any evidence admissible under the issues.

3. INSURANCE—*actual delivery of a policy not essential unless made so by the contract.* Unless made so by the contract for insurance an actual delivery of the policy of insurance to the insured is not essential to the validity of the contract, the rule in such case being that the policy becomes binding upon the insurer when signed and forwarded to the agent who took the application, to be delivered to the insured.

4. SAME—*premium on life insurance policy need not be paid in cash.* It is not essential to the validity of a life insurance policy

that the premium be paid in cash, and if so agreed upon between the insured and the agent the premium may be paid by the giving of a note.

5. SAME—*when default in payment of premium note does not render the policy void.* If a note is given by the insured for the premium on a life insurance policy under such an arrangement with the agent that the giving of the note constitutes an absolute payment, the fact that the insured had not paid the note at the time of his death does not render the policy void.

6. SAME—*when testimony of a solicitor is admissible.* Testimony of a person employed by an insurance agent to solicit insurance as to what representations he was authorized by the agent to make, and did, in fact, make, to a person whom he solicited, is admissible in an action on the policy as tending to show what arrangements were made· between the agent and the insured, even though the witness was not a sub-agent of the insurance company and did not take the application himself but merely brought the agent and the insured together.

7. SAME—*when letter from president of insurance company to the plaintiff's attorney is admissible.* In an action to recover the amount of a life insurance policy, a letter from the president of the defendant company to the plaintiff's attorney stating that the company had the unpaid notes of the insured in its possession is properly admitted in evidence as showing the giving of the notes and as bearing upon the transaction between the insured and the agent, even though the defendant claims the policy was never in force because not delivered.

8. SAME—*when evidence that the agent was engaged in loaning money is admissible.* Where the person employed by an insurance agent to get business, and who solicited the insured and brought the agent and the insured together, testifies that, he was authorized to represent, and did represent, to the insured that the agent would loan money on the policy and take notes for the loan, evidence that the agent was, in fact, engaged in loaning money is admissible, in connection with the fact that the insured executed and delivered notes for more than the amount of the premium.

9. SAME—*what amounts to a delivery of policy.* If an insurance company sends a life policy to its agent for delivery to the insured, and while the policy is still in the agent's hands an agreement is entered into between the agent and the insured whereby the agent is to retain the policy as security for a debt due him from the insured, there is a sufficient delivery of the policy.

10. INSTRUCTIONS—*party must point out defects in instruction.* An objection that an instruction does not state the law and that

it is misleading and not applicable to the facts will not be considered where no particular reason is pointed out why the instruction is so objectionable, no authorities are cited and no reference is made to the instruction in the argument.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. JOHN W. HOUSTON, Judge, presiding.

C. A. ATKINSON, and H. C. LEVINSON, for appellant.

CHARLES R. NAPIER, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This was an action brought in the municipal court of the city of Chicago by John F. Devine, as administrator of the estate of Ralph W. Chance, deceased, against the Federal Life Insurance Company, to recover the sum of $1000 alleged to be due on a policy of insurance claimed to have been issued by the company to Chance in his lifetime. The policy was dated May 4, 1907. Chance was struck and killed by a train of the Illinois Central Railroad Company on the morning of May 30, 1907. The defense to the action was that the policy had never been in force, as it had not been delivered to Chance and he had never paid any part of the first premium. The claim of the administrator was, that by an arrangement with Robert J. Jeffs, the general agent for the insurance company and the person who secured the application of Chance, the policy was delivered by the company to Jeffs for Chance, and it was held by Jeffs to secure the payment of three notes given by Chance to Jeffs, one for the amount of the first premium, one for $50 and one for $10.14. After the death of Chance, and on June 3, 1907, Jeffs, who had held the policy from the time of its issuance until that date, returned it to the insurance company, endorsed "not taken." The

jury found the issues for the plaintiff and returned a verdict for the full amount of the policy, $1000. Judgment was rendered on this verdict and an appeal was taken to the Appellate Court for the First District, where the judgment of the municipal court was affirmed. The case is brought here by appeal upon a certificate of importance.

It is first contended that this judgment should be reversed for the reason that the general verdict is contrary to certain special findings of fact made by the jury. The jury were asked to answer twelve special interrogatories which were submitted to them. Of the twelve, three were so framed that no answer was required by reason of the answers given to certain others of the interrogatories. By the first interrogatory the jury were asked, "Was the policy sued on in this action delivered by the Federal Life Insurance Company to Ralph W. Chance during his lifetime?" To this the jury answered "no," and it is claimed that this finding is so inconsistent with the general verdict that it must be held to control the same and that the court should have entered judgment for the appellant. In determining whether a special finding is so inconsistent with the general verdict that the latter must be held to be controlled by the former we cannot look at the evidence. All reasonable presumptions will be entertained in favor of the general verdict while nothing will be presumed in aid of the special finding of fact. The inconsistency must be so irreconcilable as to be incapable of being removed by any evidence admissible under the issues. (*Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132.) Applying this rule, we find that there is no irreconcilable inconsistency between this special finding of fact and the general verdict. By its terms the application for a policy of insurance may be made a part of the policy itself. The application may or may not provide that the insurance shall take effect only upon the delivery of the policy to the insured. Unless expressly made so by the contract itself, an actual delivery

of a policy of insurance to the insured is not essential to the validity of the contract, and the rule under such circumstances is, that a policy becomes binding upon the insurer when signed and forwarded to the insurance broker to whom the application for insurance was made, to be delivered to the insured. Where an application is made for insurance there is no liability until the application is accepted, but the acceptance and issuing of the policy complete the contract. (*Rose* v. *Mutual Life Ins. Co.* 240 Ill. 45.) The finding of the jury that the policy had never been delivered to Chance was not the determination of any ultimate fact, or of a fact which had a controlling effect upon any ultimate fact. This finding is not so inconsistent with the general verdict that it should control, and the court did not err in ignoring this finding and entering judgment on the verdict.

It is urged that special findings numbered 3, 5, 6, 7, 8, 10 and 12 are also inconsistent with the general verdict. We do not so regard them. The third finding was that the deceased had not paid the premium on his policy in cash; the fifth, that he did execute a note for the amount of the premium; the sixth, that the note was executed on May 10, 1907, and delivered to Jeffs; the seventh, that the note was payable in installments of $2.50 each, and that the first installment became due on May 29, 1907; the eighth, that Chance did not pay the installment falling due on May 29, 1907; the tenth, that none of the installments mentioned in said note were paid during the lifetime of Chance; and the twelfth, that the policy sued on contained the provision, "failure to pay any premium or note, or interest thereon, when due, will forfeit, without notice, the policy and all payments thereon, excepting as herein provided." It is not necessary that a premium on a policy of life insurance should be paid in cash. It can be paid by the giving of a note, or otherwise, if so agreed by the parties. That Chance executed a note and delivered it to

Jeffs, the agent, for the amount of the first year's premium, and that at the time of his death he was in default in the payment of this note, would not necessarily invalidate the insurance notwithstanding the provision found to have been contained in the policy, as Jeffs may have taken the note under such circumstances as would constitute an absolute payment of the premium. A further reason why these special findings do not show a forfeiture of the policy is, that by the twelfth finding the policy contained a clause providing for a forfeiture under certain circumstances, "excepting as herein provided." What the exceptions are is not shown by any of the special findings. For anything that is disclosed by these findings, the circumstances may have been such that they come within some exception contained in the policy which would prevent a forfeiture. As we view the special findings of the jury, and testing them by the rule above referred to, we do not regard any of them as inconsistent with the general verdict.

The parties on both sides have argued the facts elaborately, and the appellant insists that under the facts as disclosed the judgment of the Appellate Court should be reversed. All questions of fact involved have been finally determined by the judgment of the Appellate Court. We will review only the questions of law presented.

It is contended by appellant that the court erred in admitting the testimony of one Baker, a witness for appellee. In order to dispose of this objection it will be necessary to state some of the facts.

The appellant company had its general offices in the city of Chicago. Robert J. Jeffs was its general agent and had a written contract with the appellant. Jeffs was also president of a corporation known as the Consolidated Agencies Company, with offices in the city of Chicago. The witness Baker was in the employ of the Consolidated Agencies Company and worked under the immediate direction of Jeffs. Baker testified that while his employment

was nominally by the corporation and he gave his receipts for his monthly salary to the corporation, he was, in fact, working for Jeffs. Under his employment with the Consolidated Agencies Company Baker solicited insurance for Jeffs and brought together Jeffs and those who desired to make applications for insurance to appellant. It was Baker who first solicited Chance to apply to appellant for a policy of insurance. He testified that he made certain representations to Chance under the direction of Jeffs and that he stated to him only what Jeffs had instructed him to state. Those representations were, in substance, if Chance would take out a policy of insurance through Jeffs, that Jeffs would lend him money and would hold the policy of insurance as collateral or security until the notes given for the money loaned should be paid. Baker did not take the application of Chance but did succeed in bringing Jeffs and Chance together, and the application was taken by Jeffs and was sent by Jeffs to appellant. Baker further testified that, in accordance with the representations he had made to Chance under the direction of Jeffs, when the policy of insurance was issued by appellant Jeffs made a loan to Chance and Chance executed and delivered to Jeffs three promissory notes payable to Jeffs, one for the amount of one year's premium, being $30.80, one for $50 and one for $10.14, and he explained that the latter note was composed of the following items: Five dollars, which was for a credit inspection fee, and $5.14, being one year's interest in advance at the rate of six per cent on the $50 note, the note for $30.80 and the five-dollar inspection fee.

The basis of the objection to the admission of the testimony of Baker is, that in its contract with Jeffs appellant authorized Jeffs to hire such sub-agents, only, as should be approved by appellant, and that it had never approved of the employment of Baker as a sub-agent, and therefore should not be bound by any representations which Baker made to the decedent at the time the insurance was solic-

ited. The testimony of Baker was not admissible upon the theory that he was acting as a sub-agent of appellant and could therefore bind appellant by such representations as he should make in securing an application for a policy of insurance. Baker did not act as the sub-agent of appellant in this transaction. He did not secure the application of the deceased for the policy of insurance. He acted merely as the clerk or agent of Jeffs, making only such representations to Chance as he was authorized by Jeffs to make. Acting in this capacity he brought the deceased and Jeffs together and the application for the policy of insurance was made by the deceased, and when the policy was issued and delivered to Jeffs it was held by him in accordance with the arrangements made with Chance both by Jeffs personally and through the witness Baker. The testimony of this witness was admissible in order to show the nature of the contract between Jeffs and Chance whereby these three several notes were given to Jeffs, and the policy was held by him for Chance, and not for the appellant, instead of being delivered into the manual possession of Chance.

It is next objected that the court erred in admitting in evidence a letter from the president of the insurance company to the attorney for appellee, written in October, 1907. That letter was written in response to one received by the president of appellant and simply detailed that Chance had given a note to Mr. Jeffs for the amount of the premium, together with the other notes mentioned; that he had before his death only paid the note for $10.14, had paid no part of either of the other two notes and was in default at the time of his death, and for that reason, and for the further reason that the policy had never been delivered to him, the company was not liable. The letter further stated that the two notes for $50 and $30.80, respectively, were in the possession of appellant. This letter was properly admitted in evidence. The admission of the appellant that the three notes testified to by Baker were actually given

by Chance and delivered to Jeffs was a proper fact to be proven in order to throw light upon the transaction between Jeffs and Chance at the time the policy was issued.

It is also objected that the court erred in admitting testimony showing that Jeffs, acting for himself or for the Consolidated Agencies Company, was engaged in the business of loaning money, for the reason that appellant had nothing to do with the methods of business of Jeffs or the Consolidated Agencies Company in the loaning of money. This evidence was properly admitted. While it might be said that appellant had nothing to do with the business of loaning money carried on by Jeffs or by the Consolidated Agencies Company, it was a matter proper to be shown, in connection with the testimony of Baker as to the nature of the transaction between Chance and Jeffs, whether Jeffs was engaged, generally, in that line of business. The evidence discloses, however, that under the contract with Jeffs appellant did have some connection with the money-loaning business carried on by Jeffs or the Consolidated Agencies Company. Attached to the contract between Jeffs and appellant, and expressly made a part thereof, is an instrument marked "Exhibit A," whereby Jeffs is appointed general agent of appellant, with authority to solicit and write applications for life insurance for appellant, "in connection with the loaning of money by said second party [Jeffs] in any State or territory where said company is admitted," whereby Jeffs is given the exclusive right to secure applications for insurance in connection with the loaning of money to applicants for insurance, with certain limitations, and whereby it is agreed that appellant shall acknowledge and consent to the written assignment of all commissions and renewals and other profits accruing, under the terms of the contract, to the Consolidated Agencies Company, and shall consider applications for insurance, under the terms of the contract, which are secured by Jeffs by the Consoli-

dated Agencies Company. This evidence was properly admitted.

Appellant objects to the giving of instructions numbered 1, 2 and 12. Instruction No. 1 was proper. It told the jury, in substance, that if they believed, from the evidence, that appellant sent the policy to its agent, Jeffs, for the purpose of delivery to Chance, and while the policy was still in the hands of Jeffs an agreement was entered into between Chance and Jeffs that the policy should be retained by Jeffs as security for indebtedness due him from Chance, such arrangement would, in law, amount to a delivery of the policy. Appellee might complain, with some reason, of the giving of this instruction, for neither the application nor the policy provides that the policy shall not become operative until delivered to the insured. Upon the theory that a delivery was necessary, this instruction correctly states the law.

The objection to the second instruction is that it does not state the law, that it is misleading and is not applicable to the facts. No authorities are cited and no point made as to why this instruction does not state the law, is misleading or is not applicable to the facts. No reference whatever is made to the instruction in the argument. This objection will not be considered. As said in *Wickes* v. *Walden,* 228 Ill. 56: "We have repeatedly held that if counsel in their brief and argument do not point out wherein an instruction is erroneous or make a statement by which this court can know upon what basis or for what reason the trial court's action was erroneous, it is no part of our duty to search for these errors or enter upon an independent investigation of the court's own motion in order to find material on which to base a judgment of reversal."

Objection is made to the giving of the twelfth instruction. That instruction is, in substance, that under the provisions of the policy sued on, the non-payment, when due, of any installment of a note given by the insured for the

premium would render the policy void, and that if the jury found that any installment on the note given by the deceased was not paid, when due, to the defendant company or its agent, their verdict must be for the defendant, unless they believed, from the evidence, that the note was given to the agent of the defendant company and by him endorsed and delivered to some person or corporation other than the defendant company. The note had been endorsed by Jeffs to the Consolidated Agencies Company. Appellant urges two objections to the giving of this instruction: First, that it assumes that some agent of appellant had authority to endorse and deliver the note, and that there is no evidence showing any authority in Jeffs, or any other agent of appellant, to endorse and deliver the note given by Chance; and second, that under this instruction the jury might find the appellant liable even though the endorsement had been procured by fraud in which Chance participated. The written contract entered into between appellant and Jeffs, admitted without objection and not contradicted, is a complete answer to the first objection raised. As to the second objection, there was no attempt to prove that the endorsement was fraudulent or procured by any fraud in which Chance participated. The instruction is not subject to the criticisms made.

Appellant complains of other rulings by the trial court which it contends were erroneous. We have considered these alleged errors, but do not regard them of sufficient importance to require any discussion in this opinion.

We find no error in the record, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE VICKERS took no part in the consideration or decision of this case.