**The People of the State of Illinois for use of American Automobile Insurance Company, Appellant, v. Dennis J. Egan and United States Fidelity & Guaranty Company, Appellees.**

**Gen. No. 30,655.**

1. SHERIFFS AND CONSTABLES—*duty and liability of officer charged with service of writ of replevin.* The duty of an officer charged with the service of a writ of replevin is to exercise reasonable diligence in so doing, and liability will not attach to his acts or omissions in respect thereof unless it shall be made to appear that, under the facts of the particular case, he has been lacking in such diligence.

2. Sheriffs and constables—*sufficiency of evidence to show want of diligence on part of bailiff in serving writ of replevin.* Evidence in an action upon the bond of a bailiff for his alleged negligent failure to serve a writ of replevin held to warrant a finding that the officer was not guilty of negligence as alleged.

3. Appeal and error—*presumptions in favor of finding of court.* The finding of a court is entitled to the same presumptions as the verdict of a jury.

4. Appeal and error—*conclusiveness of verdict upon reviewing court.* A verdict will not be set aside where there is a contrariety of evidence, and the facts and circumstances, by fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the strength and weight of the testimony.

5. Trial—*propriety of refusal of court to make special finding of fact not controlling ultimate issue nor inconsistent with finding of court thereon.* Refusal of a trial court to make a requested finding of fact is not error where such fact, if found, would not be controlling on the ultimate issue of the case, nor inconsistent with the finding of the court thereon.

6. Appeal and error—*presumption as to nonconsideration of improper evidence by court trying cause without jury.* Where a case has been tried by a court without a jury, it will be presumed that the court did not consider improper evidence.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. John A. Swanson, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Affirmed. Opinion filed June 14, 1926. Rehearing denied July 2, 1926.

Loucks, Eckert & Peterson, for appellant; A. R. Peterson and Tom Leeming, of counsel.

McInerney & Power, for appellees.

Mr. Justice Johnston delivered the opinion of the court.

This is an action brought by the American Automobile Insurance Company, a corporation, the plaintiff, against Dennis J. Egan and the United States Fidelity and Guaranty Company, the defendants, on the bond of Egan as bailiff of the municipal court of Chicago, to recover damages in the sum of $3,000 for the

alleged negligence of Egan in failing to replevy an automobile owned by the plaintiff.

The case was tried before the court without a jury. The court found in favor of the defendants and entered judgment on the finding. From the judgment the plaintiff has prosecuted this appeal.

The principal grounds on which the plaintiff asks for a reversal of the judgment are (1) that the judgment is manifestly against the weight of the evidence; (2) that the court erred in its ruling in regard to a special finding of fact requested by the plaintiff; and (3) that the court admitted incompetent evidence prejudicial to the plaintiff.

The ultimate fact to be determined on the evidence is whether the defendant Egan was negligent in failing to replevy the automobile.

According to the general rule the defendant was under a legal duty to exercise reasonable diligence in serving the writ of replevin (*Dunlap v. Berry,* 5 Ill. [4 Scam.] 327, 331; *Gilbert v. Gallup,* 76 Ill. App. 526, 530), and he is not liable unless he has been lacking in such diligence. 35 Cyc. p. 1628. What constitutes reasonable diligence depends upon the particular facts in each case. *Guiterman v. Sharvey,* 46 Minn. 183, 184; *State v. Porter,* 1 Har. (Del.) 126, 127.

In the case at bar the evidence shows that the automobile had been stolen from the original owner, Walter S. Baer, on December 10, 1920; that after the theft of the automobile Baer executed a bill of sale of the automobile to the plaintiff; that a police officer of the city of Chicago recovered the automobile on June 25, 1921, and delivered it to a man named Clemens at the Municipal Pier of the city of Chicago, who was an employee in the custodian's department of the city of Chicago, and who was in charge of automobiles that were kept by the custodian at the Municipal Pier; that the automobile was seen at the Municipal Pier by Baer and Charles Briem, an employee of the plaintiff,

some time between July 4 and July 7, 1921, and was identified by Baer; that on July 7, 1921, the writ of replevin was delivered to George H. Woods, chief deputy bailiff of the city of Chicago.

On the questions as to what directions, if any, were given to Woods when the replevin writ was delivered to him, and the manner in which the writ was served, the evidence is conflicting.

On behalf of the plaintiff his atttorney, Bernard W. Vinissky, testified that on July 7, 1921, accompanied by Briem, he went to the bailiff's office between the hours of 9:30 and 9:45, gave the deputy bailiff in charge of the levy department the writ of replevin and an indemnity bond; that he paid $3.50 as "fees" for the service of *two* defendants, Charles C. Fitzmorris, chief of police of the city of Chicago, and Joseph F. Kapp, city custodian of the city of Chicago, both of whom were named in the writ of replevin; that he talked first to the deputy bailiff in charge of the levy department about the service of the writ of replevin; that the deputy bailiff referred him to Chief Deputy Woods; that he saw Woods and told him that he, Vinissky, had a replevin writ for an automobile in the care of the custodian at the Municipal Pier and that he wanted to get the automobile "right away"; that Briem would identify the automobile and would take a deputy bailiff with him in an automobile to the Municipal Pier; that Woods asked who the defendants were and that he, Vinissky, handed Woods the writ of replevin; that Woods said, "We haven't any man to go with you now"; that he, Vinissky, said, "When can I get a man?"; that Woods said "he wouldn't take the automobile anyway"; that it was "in the custody of the custodian of police"; that he, Vinissky, said he knew the automobile would be "there"; that it was taken from the man who stole it; that Woods said "in due course it will be served

on the chief of police''; that Woods did not send anyone with him, Vinissky, to get the automobile.

On cross-examination Vinissky testified that Woods said: ''I want to get you a special man; we don't take them away from the police department; we merely leave a copy of the writ with the chief's office''; that Woods said he would not send a man; that he, Vinissky, then went down to the custodian's office. Vinissky was cross-examined as follows:

''Q. Do you know how much the bailiff's office charge for the serving of one defendant in a replevin writ?

''A. To my knowledge $3.50.

''Q. Do you know what the charges are?

''A. I don't remember.

''Q. Don't you know it is $3.50 for the service of one defendant?

''A. I told him I wanted to serve three defendants.

''Q. Who did you tell that to?

''A. The filing clerk.

''Q. And you paid $3.50?

''A. $3.50.''

Vinissky further testified on cross-examination that after he went down to the custodian's office he never went back to the bailiff's office, and never had any further dealings with the bailiff's office in connection with the case.

Charles Briem, an employee of the plaintiff, testified on behalf of the plaintiff that on July 7, 1921, he went with Vinissky to the bailiff's office and from there he and Vinissky went to the office of the city custodian. He did not testify as to what took place between Vinissky and Woods.

On behalf of the defendants, George H. Woods, chief deputy bailiff, testified on direct examination that he had probably seen Vinissky; that he never told Vinissky that he wouldn't send a man ''over there''; that to his recollection Vinissky did not ask

him to send a man; that Vinissky may have; that he, Woods, has some recollection of the transaction; that he went down to the custodian's office [in the City Hall] and was told by Captain Norton, a police officer, who had charge of the automobile matters, that "they didn't have the car at the Pier"; that Joseph C. Crawford, a deputy bailiff, was with him, Woods; that he, Woods, thinks "there was some man to go to the Pier to turn the car over to if we got it"; that there was some man there [in the custodian's office in the City Hall] who was interested in the writ; that Norton said he had telephoned to the Pier and said that the car was not there; that Crawford served the writ of replevin on Chief of Police Fitzmorris, but he is not sure of that; that "about the talk he [presumably Vinissky] says I had with him, I told him that the police department and the City of Chicago wanted us to serve those writs in the chief's office so they wouldn't be all over Chicago, and the corporation could get some service. For that reason we served the writ in the chief's office."

On cross-examination Woods testified that he never went to the custodian's office at the Municipal Pier to get the automobile; that Crawford had the writ; that he, Woods, thinks that Briem was along there in the chief's office; that he might be mistaken; that he knows somebody was there connected with the writ representing the plaintiff; that he has no recollection of any particular conversation with Vinissky on July 7, 1921; that Vinissky may have talked to him; that he, Woods, has no recollection about that particular automobile.

Joseph C. Crawford, deputy bailiff, testified on behalf of the defendants that he got the writ of replevin on July 7, 1921, the day he made the service; that on the date of the writ he served the writ on Chief of Police Fitzmorris, who directed that the writ be turned over to Captain Norton; that a lawyer for the

The People v. Egan, 241 Ill. App. 189.

plaintiff was with him, Crawford, in the chief's office; that Norton said, "We have no such car by that number"; that some representative of the company was with him, Crawford, at the time; that he thinks it was Vinissky and that he thinks there was another man along with him, Vinissky; that he is "pretty sure" there were two there that day; that his instructions were to serve the chief of police; that the man who represented the plaintiff told him whom to serve—in fact the man said that writ runs against the chief of police and that is the way the writ reads. On cross-examination Crawford testified that when he went to the office of the chief of police he thinks there were two people with him; that he remembers now one person there with him at that time; that it was Vinissky; that he had seen him several times before that day; that he, Crawford, read the writ to the chief of police; that he, Crawford, never went to the Municipal Pier to find the automobile; that he spoke to Vinissky to find out where the automobile was; that Vinissky did not tell him it was at the Municipal Pier; that Vinissky said the "police department had got it"; that all stolen cars are not kept in the city custodian's office on the Municipal Pier; that they are kept at every station in Chicago; that Vinissky did not himself know where the automobile was on July 7, 1921; that before he, Crawford, went to the office of the chief of police he asked Vinissky where the automobile was and he said he didn't know; that he, Crawford, said to Vinissky, "Old man, you heard what Captain Norton said, that he has no car by that number"; that Vinissky and Captain Norton started to talk and that he, Crawford, went out of the office.

On rebuttal Briem testified for the plaintiff that he never in the presence of Woods nor anyone else went to Chief Fitzmorris' office in connection with the replevin suit; that he did go to the custodian's office in the City Hall; that there was no bailiff with him; that

he just went there to be there; that he did not go to the office of the chief of police; that he went to the custodian's office in the City Hall with Vinissky to be an assistant in case he, Vinissky, wanted to send him somewhere. On rebuttal Vinissky, on behalf of the plaintiff, testified that on the day the writ was served he did not go with the deputy bailiff or anybody else to the office of the chief of police, and that nobody went there at his instruction; that nobody was in charge of the service of the writ for the plaintiff except Briem and himself; that he, Vinissky, said that he wanted to serve two defendants; that he did not say to serve one defendant; that Woods "said $3.50"; that he, Vinissky, assumed "it was $1.75 apiece"; that he told Crawford that the automobile was at the Municipal Pier; that he never told Crawford that he, Vinissky, didn't know where the automobile was; that he never had any conversation with Crawford in reference to the automobile; that after he had placed the writ for service he went down to the custodian's office [in the City Hall] with Briem; that he, Vinissky, didn't wait for the deputy bailiff because Woods said "it will take the regular course and the man will leave a copy in the Chief's office."

It is provided by statute that the fees of the bailiff of the municipal court in cases of replevin shall be $1.75 for service on each defendant, and a further sum of $1.75 when a levy upon or seizure of property is to be made. Section 56, Municipal Court Act [Cahill's St. 1925, ch. 37, ¶ 449, subd. 6].

We have set out the testimony at length on the controlling issues, and the conflicts in the testimony are so direct and obvious that no discussion of the evidence is required. In our opinion there is ample evidence to support the finding of the court. The finding of the court is entitled to the same presumptions as the verdict of a jury. *Fisk v. Hopping*, 169 Ill. 105, 108. As to the verdict of a jury where the evidence

is conflicting, it was said in the case of *Illinois Cent. R. Co. v. Gillis,* 68 Ill. 317, 319: "If any rule of this court can be so well established as to be neither questioned nor require the citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the strength and weight of the testimony." To the same effect are the following cases: *Bradley v. Palmer,* 193 Ill. 15, 89; *Carney v. Sheedy,* 295 Ill. 78, 83; *Blackhurst v. James,* 304 Ill. 586, 592. It has also been held that a reviewing court should not set aside the verdict of a jury merely because there may be a doubt of the correctness of the verdict. *Illinois Cent. R. Co. v. Cowles,* 32 Ill. 116, 121; *De Forrest v. Oder,* 42 Ill. 500, 501.

Counsel for the plaintiff contend that the testimony of Crawford is inherently improbable. We cannot say, as a matter of law, that it is inherently improbable. It was the province of the trial court to determine the credibility of the witnesses, and the probability or improbability of their testimony, and a court of review will not interfere with the finding of the court unless it is manifestly against the weight of the evidence.

The plaintiff has assigned error on the refusal of the court to find specially that on July 7, 1921, the automobile was in the possession of Joseph F. Kapp, city custodian. Section 61 of the Practice Act [Cahill's St. ch. 110, ¶ 61] provides that upon a trial by the court, the court shall find specially upon any material question or questions of fact, which shall be submitted in writing by either party before the commencement of the suit. We have not been referred to any case in which the Supreme Court has construed the phrase "material question or questions of fact" as used in section 61. But in section 79 of the Prac-

tice Act [Cahill's St. ch. 110, ¶ 79] providing for special findings by the jury, the identical phrase "material question or questions of fact" is used, and the Supreme Court has construed the phrase to mean ultimate facts upon which the rights of the parties directly depend. *Chicago & N. W. Ry. Co. v. Dunleavy,* 129 Ill. 132, 143; *Smith v. Sanitary Dist. of Chicago,* 260 Ill. 453, 464; *Wicks v. Cuneo-Henneberry Co.,* 319 Ill. 344, 350. It is also the rule in regard to special interrogatories submitted to the jury that such interrogatories are not proper unless some answer responsive thereto would be inconsistent with the general verdict. *Wicks v. Cuneo-Henneberry Co., supra* (pp. 349,350). And the inconsistency must be so irreconcilable as to be incapable of being removed by any evidence under the issues. *Devine v. Federal Life Ins. Co.,* 250 Ill. 203, 206.

We do not think that the court erred in refusing to grant the plaintiff's request for the special finding. Such finding would not be an ultimate or controlling finding of fact. It would be an evidentiary fact. Even though it should be assumed for the sake of argument that the automobile was in the possession of the city custodian on July 7, 1921, that fact alone would not be controlling on the ultimate question whether in the circumstances the bailiff exercised reasonable diligence in serving the writ of replevin, and would not be inconsistent with the finding of the court.

Counsel for the plaintiff further contend that the court erred in admitting, over the plaintiff's objection, hearsay testimony as to what Captain Norton told Woods and Crawford in regard to information he received from the custodian at the Municipal Pier to the effect that the automobile was not there.

Since the case was heard by the court without a jury, it will be presumed that the court did not consider improper evidence in reaching a decision. *Merchants' Despatch Transp. Co. v. Jæsting,* 89 Ill. 152,

155; *Kreiling v. Nortrup*, 215 Ill. 195, 198; *Pratt v. Davis*, 224 Ill. 300, 305, 309.  Independently of the evidence objected to there is sufficient evidence to sustain the finding of the court.

For the reasons stated the judgment of the trial court is affirmed.

*Affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.