PAUL J. FINNEGAN, Indiv. and as Adm'r of the Estate of James W. Finnegan, Deceased, Plaintiff-Appellant, *v.* DAVID L. DAVIS, Defendant-Appellee.

Fourth District   No. 15075

Opinion filed January 4, 1979.—Rehearing denied March 8, 1979.

Ross E. Canterbury and David R. Aplington, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Herbolsheimer, Lannon and Henson, P. C., of LaSalle (Robert M. Hansen and R. J. Lannon, Jr., of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case presents the question of whether in a tort negligence action tried by a jury, the jury's answer to a special interrogatory finding the plaintiff's decedent not guilty of contributory negligence may be inconsistent with and, therefore, control over the jury's general verdict for the defendant.

We rule that it may under the unusual circumstances of this case, where under the evidence, the collision giving rise to the action could not have resulted from pure accident and must have been proximately caused by either plaintiff's decedent or defendant.

At issue is the application of section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65) which states:

> "Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly."

A two-count wrongful death action was filed in the circuit court of Livingston County by plaintiff Paul J. Finnegan as administrator of the estate of his son, James W. Finnegan, who died following a collision between the motorcycle he was operating and a pickup truck being driven by defendant David L. Davis. Count I of the complaint alleged

that defendant drove his truck in a negligent manner and count II alleged that defendant's actions or inaction were wanton and wilful. The jury was given two special interrogatories. One asked whether plaintiff's decedent had been guilty of contributory negligence, the other whether defendant was guilty of wilful and wanton conduct. The jury answered, "No" to both and returned a general verdict in favor of defendant.

A detailed statement of the evidence is necessary. The collision occurred sometime between 6:30 and 7:52 p.m. on August 19, 1976, on the Odell-Nevada Township Road in Livingston County. Defendant was eastbound, driving a 1970 GMC pickup truck. Plaintiff's decedent was westbound, driving a 1971 gold-and-white 100 cc Honda motorcycle, with Tom Mislich, Jr., as a passenger. The road is asphalt, basically straight, and has a speed limit of 55 m.p.h. In the area of the accident, the road is 18 feet 6 inches wide and has no center marking. There are no road defects and the dirt shoulder is flush to the road. One and one-half feet from the north edge of the road was a ditch, 3 to 3½ feet deep, and beyond that was a bean field. To the south of the road was a corn field.

No one was able to pinpoint the exact location of the impact. In the area of the accident was a hillcrest, high enough to affect the visibility of both east and westbound traffic. Decedent's passenger, Tom Mislich, Jr., testified that he first observed the pickup truck as it came over the hillcrest. At that point, the motorcycle was going up the hill, no faster than 30 m.p.h., and was about a foot from the north edge of the road. The truck was in the middle of the road, going 80 to 85 m.p.h., and never moved from its course or changed direction. The time from observing the truck until impact was about one second. Mislich told plaintiff's decedent to "look out" and ducked behind him. On impact, he had a sensation of being thrown out to the side more than backward or forward. He did not think the motorcycle light was lit and did not feel the decedent apply his brakes or turn the wheel before impact.

At trial, defendant was called as a section 60 witness during the plaintiff's case. He testified that he thought he was driving 50-55 m.p.h. but he had not looked at his speedometer. He was going up the hill when he first saw the motorcycle "in a flash" and they met at the crest of the hill a split second later. He was certain that he was in the right lane and the motorcycle was in the center of the road. He could not estimate the speed of the motorcycle and could not recall exactly where in the road the impact occurred. He did not recall making an attempt to avoid the motorcycle.

It was stipulated at trial that in his discovery deposition, defendant stated that he told Sergeant Gragert, the investigating officer, that the motorcycle was in the left lane, its proper lane. Sergeant Gragert testified that on the evening of the accident, defendant told him he could not

remember whether the boys were in the center or on their side of the road, and when he questioned defendant on August 24, 1976, defendant also could not recall the location of the motorcycle.

There was no evidence of braking or skid marks. Three sets of gouge marks were found near the top of the hillcrest, on the east side of the crest. All were located on the north or westbound side of the road. The westernmost set of marks were closest to the north shoulder at 3 feet 9 inches south of the north edge of the road. The middle set of marks was 4 feet 7 inches south of the north edge of the road and contained a very large, deep gouge which Sergeant Gragert testified indicated a fairly maximum engagement of some force. The easternmost set of marks was 6 feet south of the north edge of the road. There was a long east-west mark which Sergeant Gragert testified indicated movement. The total distance between the west and east gouge marks was approximately 5 feet 1 inch which also happens to be the length of the motorcycle. Sergeant Gragert testified that he assumed the marks were made by the motorcycle, although he did not definitely know which parts of the cycle made the marks. He stated that nothing on the truck could have caused the marks.

A rim mark, beginning lightly, commenced 50 to 55 feet east of the gouge marks. The mark was entirely in the north or westbound half of the road, beginning 6 feet 6 inches south of the north edge of the road and continuing 214 feet northeast until it left the road, went into the ditch and on into the bean field. It is undisputed that the rim mark was made by the pickup truck's left front or rear wheel rim. The left front tire of defendant's truck had a 3- to 3½-inch cut and there was a similar hole in the left rear tire, so that both would have deflated very shortly after the damage occurred. The initial stopping place of defendant's truck was in a bean field about 500 feet northeast of the gouge marks and about 140 feet north of the north edge of the road.

Defendant's truck was damaged on the driver's side: the left front fender was crumpled, the left front light was broken out. There were rubber marks and dents along the side of the door which Sergeant Gragert testified indicated that the motorcycle remained in contact with the left side of the truck at or during the impact. The left rearview mirror was damaged and the door to a utility box on the left side of the truck was torn loose. There was also damage just before and behind the left rear tire.

The motorcycle came to rest in the ditch about 18 feet northwest of the gouge marks. The front end was facing east, the wheels were toward the road and the seat was at the bottom of the ditch. The front wheel had been broken off and the forks snapped. The headlight had broken loose and the speedometer and handlebars were broken off. There were dents on both sides of the gas tank, the left front portion of the battery had been

broken off and the taillight screws pulled out. Plaintiff's decedent was found 26 feet northwest of the gouge marks. His left leg had been severed above the knee and he died at the scene of the accident. The passenger on the motorcycle, Tom Mislich, Jr., was found 46 feet northwest of the gouge marks in the ditch. His left leg had to be amputated as a result of the accident.

■■ The road in the area of the collision was wide enough so that the vehicles could pass without incident if each was in its proper half of the road. Therefore, one or both of the vehicles must have been at least partially on the wrong side of the road. We cannot say that the evidence presented at trial established, as a matter of law, the location of the impact. The testimony of defendant and the passenger on the motorcycle was contradictory, and the physical evidence was not conclusive. Accordingly, we cannot agree with plaintiff's contention that the general verdict was contrary to the manifest weight of the evidence.

The question then is whether the location of the impact was determined by the jury's answer to the special interrogatory finding the decedent to be not guilty of contributory negligence.

Plaintiff's theory that such a determination was established begins by applying the rule pronounced in *Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 227 N.E.2d 758. There, the supreme court ruled that the defendant was negligent as a matter of law. Defendant's car and the car in which plaintiff was a passenger were travelling in opposite directions. The collision occurred about 9:30 p.m. The weather conditions were very poor. It was snowing heavily, visibility was poor, and the road was slick. It had rained and sleeted earlier in the evening. Defendant's car was proceeding down a slight slope at about 25 m.p.h. As it approached plaintiff's vehicle, it went into a skid. Defendant turned the wheel to the right and the rear end of her car slipped into the other lane and was struck by the car in which plaintiff was riding. The court stated that there was no question of contributory negligence.

After noting that the defendant offered no explanation of the cause of the skid other than the ice on the pavement, the court stated,

> "It is undisputed that the collision occurred on the plaintiff's side of the road, and no affirmative showing was made by defendant that the skid into the opposite lane in front of the plaintiff's car happened without negligence on her part. She made no effort to show that she was not driving too fast for road and weather conditions, or that some unavoidable event caused her to lose control. The fact that her car skidded in front of the one in which plaintiff was riding must be deemed to have arisen from some negligent act or omission, in the absence of explanation to the contrary. [Citations.]" 37 Ill. 2d 596, 598, 227 N.E.2d 758, 760.

In the instant case, the evidence was much stronger than in *Calvetti* that the collision must have resulted from the negligence of at least one of the drivers. The evidence clearly showed that the road was wide enough for two automobiles to pass each other, let alone an automobile and a motorcycle. No weather or road defects were shown. Sergeant Gragert testified that a few days after the collision, defendant told him that he had been looking at the road, had not been distracted by anything and had not moved to avoid hitting an animal. No reason was shown to excuse either driver from being in the wrong half of the road.

■■ Had plaintiff's decedent been in defendant's half of the road at the time of impact, he would have been guilty of contributory negligence as a matter of law under the rule of *Calvetti*. If we may permissibly consider the jury's answer to the special interrogatory in the light of the evidence presented, we would be required to conclude as a matter of law that the motorcycle was on its proper half of the road at the time of impact. We would also have to conclude that the defendant's vehicle was at least partially on that same side of the road or else there would have been no collision. If defendant's vehicle was on that side of the road, he would have been guilty of negligence as a matter of law according to *Calvetti* and liable for the wrongful death of the decedent.

As an answer to the interrogatory finding plaintiff's decedent to be guilty of contributory negligence would have barred plaintiff's recovery on the negligence count, the interrogatory was properly given. However, the jury answered that the decedent was not contributorily negligent. With the question of defendant's negligence also an issue for the jury, such an answer to the interrogatory would ordinarily be of no effect. Our ruling that the answer did control here is based upon our determination that we may look to the evidence and find that the collision must have been caused by one of the drivers.

Language in early decisions would indicate that we cannot properly consider the answer to the interrogatory in the light of the evidence in this manner.

In *Devine v. Federal Life Insurance Co.* (1911), 250 Ill. 203, 95 N.E. 174, suit was brought to recover on a life insurance policy. Judgment was entered on a jury verdict for the plaintiff for the full amount and affirmed by the appellate court. The jury had been given various special interrogatories including one asking whether the policy had been properly delivered. This was answered in the negative and defendant claimed that the answer should have controlled over the verdict. The supreme court affirmed ruling that under the terms of the policy, delivery was not necessary and, therefore, the answer to the interrogatory was not inconsistent with the verdict. In the course of the opinion the court stated:

> "In determining whether a special finding is so inconsistent with the general verdict that the latter must be held to be controlled by

the former we cannot look at the evidence. All reasonable presumptions will be entertained in favor of the general verdict while nothing will be presumed in aid of the special finding of fact. The inconsistency must be so irreconcilable as to be incapable of being removed by any evidence admissible under the issues." 250 Ill. 203, 206, 95 N.E. 174, 176.

It would seem that the ruling was that the interrogatory was improperly submitted to the jury and that the foregoing was dictum. Furthermore, if the policy was in evidence, the court did look to the evidence to determine whether the answer to the interrogatory was inconsistent with the general verdict.

The foregoing language was cited with approval in *Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 150 N.E. 276, in a case where the court ruled that an interrogatory not on a controlling fact should not have been submitted to the jury.

More recently in *Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 278 N.E.2d 453, a negligence action arising from an automobile collision and brought by a passenger in one car against the driver of another, the trial court submitted special interrogatories as to whether (1) inclement weather was the proximate cause of the collision and (2) defendant was guilty of negligence contributing to the collision. The jury answered the first question in the negative and the second in the affirmative and gave a verdict for the defendant. The trial court set aside the verdict as being contrary to the answers to the interrogatories and ordered a new trial on damages. The appellate court reversed ruling that the interrogatories did not control because they did not dispose of the issue of whether plaintiff was injured by the occurrence and whether defendant's negligence was a proximate cause thereof.

In referring to the application of section 65 of the Civil Practice Act, the court stated:

"Judicial interpretation of this section has established that statutory inconsistency exists only when the special findings are clearly and absolutely irreconcilable with the general verdict. (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 150 N.E. 276; *Devine v. Federal Life Insurance Co.* (1911), 250 Ill. 203, 95 N.E. 174.) Where an examination of the jury findings reveals that a reasonable hypothesis consistent with the general verdict exists, the special findings cannot be said to be absolutely irreconcilable. (*Devine v. Federal Life Insurance Co., supra; Smith v. McCarthy* (1889), 33 Ill. App. 176.) Therefore, if the special findings do not cover all the issues submitted to the jury and are not solely determinative of the case, a reasonable hypothesis consistent with the general verdict exists." 2 Ill. App. 3d 1018, 1019, 278 N.E.2d 453, 455.

Thus the *Devine* statement that for the special interrogatory to control, the inconsistency must be "incapable of being removed by any evidence admissible under the issues" was modified in *Cohen* to a statement that the inconsistency must not be explainable on any reasonable hypothesis.

Most recently in *Legerski v. Nolan* (1971), 132 Ill. App. 2d 51, 265 N.E.2d 696, and *Calcese v. Cunningham Cartage, Inc.* (1975), 25 Ill. App. 3d 1094, 322 N.E.2d 620, cases have come before the Appellate Court for the Second District where, as here, a jury has rendered a verdict for defendants in a negligence case but answered a special interrogatory finding the plaintiff free of contributory negligence. In both cases, the trial court's entry of judgments on the verdicts was affirmed. However, in neither case did the court merely state that under the pleadings the issue of defendant's fault remained and could have been decided adversely by the jury. Rather the court looked also to the evidence to demonstrate that the verdict and the answer to the special interrogatory were consistent.

As here, *Legerski* arose from a collision between vehicles travelling on a road in opposite directions. That court stated:

> "We find no inconsistency between the jury's special verdict that John Legerski was not guilty of contributory negligence and the general verdict that defendant was not liable. Under the circumstances of this case, to find that the plaintiff driver was not guilty of contributory negligence does not necessitate a finding that the defendant was guilty of negligence which was the proximate cause of the accident. Given the weather conditions which the jury could consider in weighing the testimony, the jury could well have found that the collision was an unavoidable accident caused, for example, by these conditions rather than by any negligence of the defendant or of the plaintiff driver." 132 Ill. App. 2d 51, 54-55, 265 N.E.2d 696, 698.

■■ The clear inference from the more recent appellate court opinions is where, under the evidence, there is no reasonable hypothesis whereby the general verdict can be found to be consistent with the answer to a special interrogatory, the latter controls the court's judgment even though, under the issues drawn by the pleadings, the two may be consistent. We agree with this rule.

The underlying reason for the general rule set forth in section 65 of the Civil Practice Act has been stated to be that,

> "[A] jury more clearly understands a particularized special interrogatory than a composite of all of the questions in a case, and therefore a special finding upon which a jury presumably has more intensively focused its attention should prevail over an inconsistent

general verdict." *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266, 226 N.E.2d 16, 19.

Applying that theory to the case on appeal where under the evidence, applying *Calvetti*, one or the other of two vehicle drivers must necessarily have been negligent, the answer to the interrogatory is more likely to be accurate than the general verdict and should control.

We need not discuss other errors claimed by plaintiff.

We reverse the judgment for the defendant and remand the case to the circuit court of Livingston County with directions to enter judgment in favor of the plaintiff on the question of liability notwithstanding the verdict and to hold a trial on damages.

As plaintiff's decedent has been determined to have been in the exercise of due care, no negligence on the part of his parents in permitting him to use the motorcycle could have contributed to his death. Accordingly, no instructions concerning diminution of damages because of any negligence on their part should be given on retrial.

Reversed and remanded.

TRAPP and CRAVEN, JJ., concur.