**Paula Swickard Leming, Plaintiff-Appellee, v. Glenn Oltman, Defendant-Appellant.**

**Gen. No. 10,833.**

Fourth District.

October 5, 1967.

Rehearing denied and opinion modified November 2, 1967.

Craig and Craig, of Mattoon (Jack E. Horsley, Richard F. Record, Jr. and Fred H. Kelly, of counsel), for appellant.

■

Brainard & Bower, of Charleston (J. Leeds Bower, Henry E. Kramer, and H. Ogden Brainard, of counsel), for appellee.

TRAPP, J.

Defendant, Glenn Oltman, appeals from a judgment entered upon a jury verdict in favor of the plaintiff, Paula Swickard Leming, for personal injuries in the amount of $15,875.

It is contended that the trial court erred in refusing to direct a verdict in favor of defendant, in refusing a judgment notwithstanding the verdict and denying his motion for a new trial. Error is also claimed as to certain instructions.

Plaintiff was a guest in an automobile driven by a fellow student, Rudy Ketchie, in an easterly direction on Route 16 between Mattoon and Charleston. As it travelled at a speed of 45–50 miles per hour this car was struck at the left rear by the right front of defendant's vehicle. The highway is a four-lane concrete pavement divided by a median between the respective east and west lanes. At the point of the collision, it extends generally east and west and is described as being essentially straight and level. The night was clear and the pavement was dry.

Following the impact, the Chevrolet in which plaintiff was riding went over the shoulder and striking the bank at the right front fender, turned end for end and rolled one and one-half times. It came to rest on its top with the front pointed to the southwest some 55 yards from the point of impact. Defendant's Chevrolet, as measured by the State Highway Police, travelled 342 feet beyond the Ketchie automobile and 66 feet into a field, as measured from the highway.

We are called upon to consider two aspects of the evidence. The record discloses that the defendant stated upon several occasions that he had apparently fallen

100

asleep: in a statement to a State Policeman at the scene of the accident; in a statement made in the presence of Rudy Ketchie, Ketchie's parents and plaintiff's parents at the Charleston hospital; in a telephone statement to plaintiff while the latter was in the hospital the first week after the accident; in a statement made in answer to written interrogatories filed May 11, 1965, two years after the accident, and in a deposition taken May 22, 1965.

On the trial, defendant repudiated the statements that he had been asleep prior to the accident. Based upon a reflection that the only thing he could then remember after passing the Blaw-Knox factory, about 5 miles west of the scene, defendant reasons that he does not believe he could have been asleep for five miles on a road that has some curves and some dips.

Testimony was elicited hypothetically from Dr. Lewis E. Adkins, a general practitioner in Charleston, Illinois, that a person in defendant's circumstances who had received a blow on the head "very possibly could have been suffering from retrograde post-traumatic amnesia."

█ Upon this aspect of the evidence, the jury could well have found that defendant was asleep at the time of the impact. There is nothing inconsistent with being asleep at the time of an accident and being a victim of retrograde post-traumatic amnesia, if, in fact, he was. The hypothetical question that was asked included an assumption that the person was not drowsy. The jury could have found that the prior statements of the defendant, that he was, or apparently was, asleep were correct, and that the hypothetical question to the doctor was therefore inapplicable. Amnesia would not establish what actually happened, but only that defendant could not account for the events. If he was not asleep or drowsy, the jury could properly have concluded from the facts in evidence that defendant was negligent.

Plaintiff's host, Rudy Ketchie, testified that the lights of the car were lighted. He was not asked, either on direct or cross-examination, concerning the taillights as distinguished from the headlights. Plaintiff testified that she had driven earlier that evening, that the lights worked and the turn signals functioned. She also testified that immediately prior to the impact, the car in which she was riding had its lights on. She did testify that she could not state from actual observation that the taillights of the car in which she was riding were lighted at the time of collision. By reason of such record, defendant argues that there was no evidence of negligence on the part of the defendant justifying the submission of the case to the jury.

■ ■ The jury could well find the action of the defendant in overtaking and running into the rear of the automobile in which plaintiff was riding to be negligent, even if its taillights were not lighted. For all practical purposes, the control of the situation was with the defendant and, assuming that the driver of plaintiff's car was guilty of contributory negligence, it would be immaterial to plaintiff's right to recover unless such negligence could be found to be the sole cause of the collision. We cannot say, as a matter of law, that under such circumstances, the absence of taillights is necessarily the sole cause of the collision. Again, there is actually no evidence that the lead car's taillights were not working. When Ketchie testified that his lights were on, it was within the province of defendant's counsel to inquire whether he observed both front lights and taillights. The jury had evidence, which taken most favorably to the plaintiff would authorize a finding that the lead car's taillights were turned on at the moment of impact.

The trial court did not err in refusing to direct a verdict for the defendant, or in refusing to order a judgment notwithstanding the verdict.

102

Complaint is made that the jury was informed of the presence of liability insurance in the case, so that the trial court should have granted a motion for mistrial. An affidavit was filed that one Thomas Burke, who was not connected with the case in any way, spoke to defendant's counsel in a restaurant during the trial at a point where four jurors could have heard him, and said, "Well, Mr. Horsley, I know you're putting up a good fight for your insurance company." Mr. Burke's testimony varies somewhat. He stated that he was talking to a friend who asked him if there was any money to be made fighting an insurance company and he, Mr. Burke, said to his friend, "I don't know, I suggest you ask Mr. Horsley." Mr. Burke then said in a loud voice to Mr. Horsley, "Mr. Horsley, this man asked me if there's any money to be made in fighting an insurance company." According to Mr. Burke, Mr. Horsley looked startled and Mr. Burke terminated the conversation.

We have examined the several authorities cited by the defendant, including Rutherford v. Bentz, 345 Ill App 532, 104 NE2d 343, which states that injection of insurance before a jury might be grounds for reversal; McCarthy v. Spring Valley Coal Co., 232 Ill 473, 83 NE 957, which states that injection of insurance by counsel is reversible error; Clark v. Hasselquist, 304 Ill App 41, 25 NE2d 900, which states that it is error for counsel to persist in showing that a statement was taken by an agent of an insurance company; Carlson v. Healey, 69 Ill App2d 236, 215 NE2d 831, which states that counsel's comments on insurance in rebuttal argument constituted prejudicial error; Guardado v. Navarro, 47 Ill App2d 92, 197 NE2d 469, which discusses the possibility of an exception to the rule where one is seeking to show the person taking the statement had an interest in the defense, and Kavanaugh v. Parret, 379 Ill 273, 40 NE2d 500, where the court found that counsel unnecessarily and improperly injected in-

surance in the voir dire examination. We have also examined the annotation in 4 ALR2d 761 wherein it is stated that inadvertent injection of insurance is not ground for reversal in the majority of American jurisdictions; Hoffman v. Jenard, 334 Ill App 74, 78 NE2d 322, where an inadvertent reference to coverage was held not to be reversible error; Williams v. Consumers Co., 352 Ill 51, 185 NE 217, to the same effect; Rench v. Bevard, 29 Ill App2d 174, 173 NE2d 1, where a chance remark by a spectator was held not to constitute prejudicial error, Sphatt v. Tulley, 38 Ill App2d 229, 186 NE2d 670, where a chance remark by a witness was held not to be prejudicial error, and Isenhart v. Seibert, 6 Ill App2d 220, 127 NE2d 469, to the same effect.

■ The matters raised are more remote from the trial than those in Rench v. Bevard, supra, and, as there, the plaintiff had no association with the casual remark of a person not present at, nor in any way interested in, the litigation. There was no error in denying a mistrial.

■ Complaint is made that in rebuttal of defendant's evidence of habits of careful driving, plaintiff's counsel asked defendant if he was arrested for a traffic violation on February 10, 1963. Objection was made and sustained and the court, at defendant's counsel's request, instructed the jury to disregard all inferences from the question. The refusal to grant a mistrial was, at such point, not error.

■ Complaint is made of instructions given and refused. Plaintiff's given Instruction No. 4B is in the language of IPI 5.01:

> "If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

104

"1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

"2. The witness was not equally available to an adverse party.

"3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

"4. No reasonable excuse for the failure has been shown."

It appears that plaintiff was examined by a Dr. David Wilbur at the request of defendant's attorney. It further appears that one Ernest Monk was a passenger in defendant's automobile. Neither was called as a witness by defendant. Defendant relies upon Hoff v. Yellow Cab Co., 53 Ill App2d 333, 203 NE2d 8 as requiring us to hold the giving of this instruction to be reversible error. There plaintiff had not called the physician performing surgery. The treating physician, who assisted in the surgery, testified, however, concerning the operation. The court, stating that the absent physician could have been subpoenaed by the defendant, held that it was not reversible error to refuse IPI 5.01. We believe this case distinguishable upon the facts. Within the context of the comment upon the instruction, IPI 5.01, we believe that the witnesses were not "equally available" to the plaintiff. While plaintiff consented to examination by defendant's physician, Dr. Wilbur, this was an alternative to examination by court order within the meaning of Santiemmo v. Days Transfer, Inc., 9 Ill App2d 487, 133 NE2d 539. As to Monk, the record indicates a long time friendship with defendant which suggests a likelihood that he would be biased against the plaintiff within the meaning of United States v. Beekman, 155 F2d 580. At

the trial, defendant's counsel stated, "He isn't here," and that counsel did not intend to call Monk. Within the language of the instruction this does not appear to be a "reasonable excuse" for defendant's failure to call him. The instruction is well-guarded against misunderstanding by the jury and there was no reversible error in giving it.

■ We find no error in the giving of plaintiff's Instruction No. 9, a form of IPI 60.01, which incorporates statutory provisions regarding speed in excess of that which is reasonable and proper, with regard to traffic conditions and use of the highway and the duty of the driver to decrease speed when special hazards exist with respect to other traffic, even though such instruction also refers to maximum speed limits not stated in the evidence.

■ Complaint is made of plaintiff's Instruction No. 12 in its reference to future pain and suffering, future medical expense and future loss of earnings. In view of the evidence that plaintiff has permanent injuries, permanent source of pain and permanent disabilities in reference to functional abilities such as typing, filing, standing and housework, we find no error in the giving of this instruction.

■ Complaint is made of the refusal of defendant's offered Instruction No. 15, which instructed that the statute requires a lighted taillight, that if the jury should find the statute was violated it could consider this circumstance with others in evidence on the question of defendant's negligence, that if the jury should find defendant's negligence was a proximate cause, then it is not a defense that some third person may also have violated the statute and may have been to blame; on the other hand, if some third person violated the statute and his violation was the sole cause of the occurrence and no negligence of the defendant was a proximate cause, then the verdict should be for the defendant.

Insofar as the requirements that the defendant be found to be negligent and that such negligence be found to be a proximate cause of the injury are concerned, we believe defendant's position was covered and protected by plaintiff's given Instruction No. 11, stating requirements for recovery. We think the tendered instruction is confusing in referring to the possibility that a third person may have also violated the section of the statute regarding taillights.

While each party is entitled to instructions fairly setting forth legitimate theories of defense, in this case there was, in fact, no evidence that the taillight was not burning, but, at most, a speculation based upon an asserted absence of proof that the lights were burning at the moment of impact, and that the instructions as a whole protected defendant's theories of defense. The Abstract indicates defendant argued his theory. There was no reversible error in refusing defendant's offered Instruction No. 15.

The judgment of the trial court is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.