HAROLD DOERGE, Plaintiff, *v.* WABASH RAILROAD COMPANY, Defendant and Third Party Plaintiff-Appellee.—(Terminal Railroad Association of St. Louis, Third Party Defendant-Appellant.)

(No. 70-92;

Fifth District—March 23, 1972.

*Rehearing denied May 5, 1972.*

Sprague, Sprague & Lechien, and Bock and Stenger, both of Belleville, (Ralph T. Stenger, of counsel,) for appellant.

Pope & Driemeyer, of East St. Louis, and Roberts, Gundlach & Lee, of Belleville, (W. Thomas Coghill, Jr., and Norman J. Gundlach, of counsel,) for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This action is a suit for personal injuries and damages resulting therefrom brought under the Federal Employers' Liability Act against defendant Wabash Railroad Company (hereinafter called "Wabash"). Wabash in turn filed a third party action for indemnity against Terminal Railroad Association of St. Louis as third party defendant (hereinafter called "Terminal"). Plaintiff's complaint set forth two causes of action, the first of which set forth in Count I, occurred on April 21, 1963, and involved a Wabash train on which plaintiff was the engineer, being pushed by another Wabash engine, into a train operated by Terminal employees on the wrong track; the second, set forth in Count II, occurred on June 22, 1963, and involved plaintiff falling on a Wabash turntable. The jury awarded plaintiff a verdict of $30,000 on Count I, and $10,000 on Count II.

Wabash was awarded a $30,000 verdict on its third party complaint against Terminal, which consisted of two counts; the first of which alleged the existence of a contract containing certain transportation rules which Wabash contended provided it indemnification; and the second of which was based on an active-passive negligence theory. By answer to a special interrogatory the jury found that Wabash as third party plaintiff was not actively negligent in causing or contributing to the accident occurring on April 21, 1963. The trial court directed a verdict in favor of Terminal on Count I of the third party complaint, but denied the motion for a directed verdict on Count II of the third party complaint.

Judgment was entered on each of the verdicts. Plaintiff's post trial

motion requesting a new trial on the basis of inadequate damages was denied, as was Wabash's motion for judgment notwithstanding the verdict. Terminal's post trial motion praying that the answer to the special interrogatory and the judgment against it be set aside and judgment be entered in favor of Terminal on the third party complaint was denied, as was its prayer in the alternative for a new trial.

Plaintiff appeals on the ground that the jury verdict is inadequate. Terminal appeals on the ground that the evidence fails to prove a right of indemnification by Wabash against Terminal.

The occurrences involved in this action were a train collision on April 21, 1963, and a fall occurring on June 22, 1963, on a turntable. At the time of the accidents, plaintiff was employed by Wabash as an engineer operating a switch engine in the Brooklyn Yards, East St. Louis, Illinois. On April 21, 1963, plaintiff was located in his engine at the south end of a train being shoved by another Wabash engine from the north end. Plaintiff's engine, after plaintiff leaped from it, collided with a train operated by employees of Terminal which was located on the wrong track. There is evidence in the record showing that the Wabash train could have been stopped and the collision avoided if the other members of the Wabash crew had been in their proper places. Plaintiff, upon seeing the Terminal train, applied his brakes and blew the whistle. Because no stop signal was communicated to the Wabash engine on the north end it kept shoving and prevented the train from stopping. Approximately twenty-five feet before the collision and while the Wabash train was traveling about five miles per hour, the plaintiff left the engine.

Following this incident he did not think he had hurt his back, and he continued to work regularly, driving a round trip each day of 100 miles to and from work. On June 22, 1963, he stumbled on the turntable. He finished his shift that day and continued working regularly until September 30, 1963. There was evidence that on that day he had injured himself at home when he suddenly stooped down to pick up a can of lard. He first consulted a doctor on October 5, 1963, when he signed a report made by his doctor which made reference to no incidents other than that of September 30. He was then hospitalized and on October 18, 1963, was operated on for a herniated disc. Plaintiff returned to work on February 6, 1964. He was still experiencing some pain in his legs and back which was aggravated by the normal stresses involved in his job as an engineer. Finally in March, 1965, he was experiencing pain from the mere turning of his head or back and discontinued work at that time.

The medical testimony was to the effect that plaintiff's complaints, which resulted in his discontinuing work, could have been related to incidents not related to the collision or the turntable incident.

In regard to damages an economist testified as to the damages giving the total loss sustained of $290,878. The breakdown being $68,645 lost wages, $200,698 future lost wages and $21,535 past and future lost services provided in the home by the husband.

■■ The test to be applied by this court is set forth in *Blyzes v. Midwest Towing Co., Inc.* (1969), 109 Ill.App.2d 48, wherein we stated at page 55:

"The courts of review in this state have also repeatedly held that the assessment of damages is primarily a question of fact for the jury and that an Appellate Court should not substitute its judgment for that of the jury's as to the amount to be awarded in a given case. *Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 158 N.E.2d 63; *Wells v. Gulf, M. & O. R. Co.*, 82 Ill.App.2d 30, and cases cited therein."

■■ Because of the state of the evidence in this case, we will not interfere with the amount of the verdict. The testimony was such that the jury could reasonably infer that the plaintiff's back complaints stem from the lard can incident and not from the collision or the turntable incident which caused complaints regarding the leg, ankle and hip.

Regarding the jury verdict holding Terminal liable to Wabash for $30,000, we reverse. In *Chicago & Illinois Midland Ry. Co. v. Evans Const. Co.* (1965), 308 N.E.2d 573 at page 574-75 the court stated:

"In any case involving a noncontractual claim of indemnity between tort-feasors, the indemnitee has, by hypothesis, violated a duty that he owed to a third party and has become liable to respond in damages for his breach of duty. By his action for indemnity he seeks to shift the loss to the indemnitor upon the theory that the indemnitor has also violated a duty that he owed to the third party. Particularly in jurisdictions like this one, in which contribution among joint tort-feasors is not allowed, (See *Johnson v. Chicago and Pacific Elevator Co.*, 105 Ill. 462; *Skala v. Lehon*, 343 Ill. 602, 175 N.E. 832) it is necessary to draw a qualitative distinction between the negligence of the two tort-feasors if the action for indemnity is to succeed."

At page 575 the court continued:

"Most frequently, perhaps, the conduct of the indemnitee is described as passive negligence, and that of the indemnitor as active negligence. (See *Gulf, Mobile and Ohio Railroad Co. v. Arthur Dixon Transfer Co.*, 343 Ill.App. 148, 98 N.E.2d 783.)"

In *Spivack v. Hara* (1966), 69 Ill.App.2d 22, 216 N.E.2d 173, 174—75 the court stated:

"To combat the harshness of a rule prohibiting contribution among tort-feasors in all cases, Illinois courts have developed certain exceptions where indemnity is allowed. In general these exceptions arise

where the party seeking indemnity has been guilty of only 'legal' or 'technical' negligence, while the indemnitor has committed the 'active' or 'primary' negligence. The objective of the courts was stated in *Gulf, Mobile & O.R.R. Co. v. Arthur Dixon Transfer Co.*, 343 Ill.App. 148, 98 N.E.2d 783, as follows: 'to do justice within the law so that one guilty of an act of negligence—affirmative, active, primary in its character—will not escape, scot-free, leaving another whose fault was only technical or passive to assume complete liability'.

The usual case in which this exception is applied involves a specific relationship where the defendant incurring derivative liability has neither participated in the wrongful act nor known of the condition which caused the injury. Thus in *Moroni v. Intrusion Prepakt, Inc.*, 24 Ill.App.2d 534, 165 N.E.2d 346, this court held that an owner who had been held liable under the Scaffold Act could recover indemnity from the contractor whose employee was injured by the contractor's negligence, where the owner was shown to have no knowledge of the defective equipment. The court followed the general principle that the 'rule against indemnity between tort-feasors does not apply between parties, one of whom is the active and primary wrongdoer and the other bears a passive relationship to the cause of the injury.' *John Griffiths & Son Co. v. National Fireproofing Co.*, 310 Ill. 331, 141 N.E. 739, 38 A.L.R. 559; *Gulf, Mobile & O.R.R. Co. v. Arthur Dixon Transfer Co., supra.*"

■■ Based on the law and the evidence presented at trial, we hold that the trial court should have directed a verdict in favor of Terminal on the third party complaint. The answer to the special interrogatory is not supported by the evidence. The evidence shows Wabash guilty of active negligence in not providing the necessary and customary lookouts for communication from plaintiff's engine on the south to the shoving engine on the north. The fact that Terminal's engine was on the wrong track is not overlooked. Its presence on the wrong track did not change the character of Wabash's negligence.

We therefore affirm the judgment of plaintiff against defendant Wabash, and reverse the judgment of Wabash against Terminal.

Affirmed in part, reversed in part.

G. MORAN, P. J., and JONES, J., concur.