Otto Bittner, Plaintiff-Appellant, *v.* Wheel Horse Products, Inc., Defendant-Appellee.

(No. 59290;

First District (3rd Division)—April 17, 1975.

*Rehearing denied May 15, 1975.*

Morgan, Lanoff, Cook & Madigan, of Chicago (James T. Ryan and James E. McParland, of counsel), for appellant.

Torshen, Fortes & Eiger, Ltd., and Garretson & Santora, both of Chicago (Jerome H. Torshen and Robert A. Skirnick, of counsel), for appellee.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

This is a products liability action arising out of an accident which oc-

curred on January 14, 1968 in which plaintiff, Otto Bittner, lost three fingers on his right hand while attempting to dislodge snow with his hand from the clogged snow discharge chute of a snowblower. Plaintiff brought this action against defendant Wheel Horse Products, Inc., the manufacturer of the snowblower, and alleged that defendant defectively designed the clutch of said machine.

The jury entered a verdict for the defendant and plaintiff now appeals.

Plaintiff's contentions on appeal are as follows: (1) the trial court erred in refusing to permit plaintiff to start and run the snowblower in the presence of the jury; (2) that a special interrogatory propounded by defendant was improperly submitted to the jury and that the answer thereto requires that this cause be remanded for a new trial; (3) that the trial court erred in permitting the expert witness of the defendant to testify; and (4) that the jury should not have been instructed on the affirmative defense of assumption of risk and that said instructions improperly stated the law.

We affirm.

The snowblower in question has a series of blades in front, the rotor, which feeds snow to a metal wheel consisting of four blades, the impeller. The impeller then throws the snow out through the discharge chute. On the side of the snowblower there is a lever called the rotor clutch which is designed to engage or disengage the rotor and impeller from the engine depending upon whether the clutch lever is placed in the "run" or the "stop" position. The "run" position is located at the uppermost point and the "stop" position at the lowest point. Just below the stop position is a metal ledge which extends at a right angle to the lever and out from the machine.

Plaintiff's testimony revealed that on the day of the accident, it had snowed three or four inches and that plaintiff was using the snowblower to clear this snow from the premises at 203 N. Kenilworth in Oak Park where he both lived and worked. In the process of clearing the snow, the discharge chute on the snowblower became clogged with snow to the point that the machine was inoperable. According to the testimony of the plaintiff, before attempting to remove the snow, he placed the clutch lever in the stop position, but did not turn the engine off. Plaintiff then took a stick to clear the accumulated snow and ice from the discharge chute and the ice and snow which he could not remove with the stick he tried to remove with his hand. While plaintiff was removing the snow in this fashion, his fingers were severed by the blades of the impeller.

Safety rules were printed on the machine itself and were further contained in the owner's manual. The following warning was printed on the

panel of the machine between the operating handles on the back of the machine:

"SAFETY FIRST

STOP ENGINE BEFORE CLEANING DISCHARGE, REMOV-
ING OBSTACLES, MAKING ADJUSTMENTS, OR WHEN
LEAVING OPERATING POSITION [.]
KEEP HANDS AND FEET AWAY FROM INTAKE OR DIS-
CHARGE.

\*   \*   \*

\*   \*   \* READ SAFETY INSTR. AND OWNER'S MANUAL."

The owner's manual warned the operator to take the following precautions:

"To avoid accidents, shut off engine before adding gas, oil, before making adjustments, or inspections of any kind.

CAUTION: Always STOP ENGINE and disengage rotor clutch before attempting to remove obstructions from the chute or rotor.

\*   \*   \*

If chute should become plugged with snow DO NOT stick your hand in chute and attempt to clean it out. Disengage rotor clutch and shut off engine. *The chute should be cleaned out with something other than your hand."*

It is not clear from the testimony whether the plaintiff actually received this owner's manual. Plaintiff said he did not. However, Mr. Waltenberg, construction superintendent for the building where plaintiff worked and the person who bought the snowblower, testified that he believed the machine came with a manila envelope, that he did not know what was in the envelope, and that he could not remember whether he gave the envelope to the plaintiff. At his deposition, however, Mr. Waltenberg testified that he gave the envelope to the plaintiff.

Plaintiff testified that the snowblower was taken in for repairs three times. Plaintiff's witness, Mr. Waltenberg, also testified that the snowblower was repaired. There is no evidence of record as to what was repaired. Plaintiff, however, was positive that Wheel Horse did not perform the repairs. Plaintiff also indicated that he had operated the snowblower four times previous to the accident.

The record further reveals that the plaintiff presented two expert witnesses who testified concerning the defective design of the clutch mechanism on the snowblower. Plaintiff's experts indicated the following: that the type of clutch used by the defendant was a nonpositive method of disengaging the engine from the rotor and impeller; that raising the clutch lever one-half inch from the stop position would cause the clutch to come into the neutral position; that slight movement could cause the

lever to snap up into the engaged position or snap down into the disengaged position; and that it would be possible for engine vibration to cause the clutch lever to be dislodged into the run position. Plaintiff's experts also testified that the ledge below the "stop" position was a natural place for ice and snow to accumulate, thereby losing the half inch available for the "stop" position and preventing positive disengagement of the clutch. Mr. Morris, chief project engineer in charge of design of snow removal equipment for Wheel Horse, testified that Wheel Horse extensively tested its snowblower in the field under all weather conditions and that the clutch unit was never found to be affected by either snow or ice. Mr. Morris also testified that the clutch unit cover is made of a special plastic which has a low resistance of cohesion so that even if ice or snow came in contact with the surface it would fall off easily.

Mr. Morris further testified that he went to a meeting approximately 10 months after the accident to determine how the accident took place to see if anything had failed on the machine. Mr. Morris testified that at this meeting he engaged and disengaged the clutch, and with the lever disengaged he operated the machine at different speeds, bounced and shook the machine and at no time did the rotor clutch engage. It was Mr. Morris' interpretation after this meeting that there was nothing wrong with the machine.

Plaintiff contends that the trial court should have allowed him to start and operate the snowblower in the presence of the jury and should also have permitted the expert witness of plaintiff to remove the clutch housing to show the jury how the clutch worked and why it was likely to fail. The trial court admitted the snowblower into evidence, but denied plaintiff the opportunity to start or operate the machine in the presence of the jury. The record indicates that a period of approximately 4½ years had passed between the accident and the time of trial, and except for Mr. Morris' testing of the snowblower, the snowblower had been kept in storage and had never been used. In explaining its decision of not permitting the plaintiff to start or operate the snowblower, the trial court gave the following reasons: that the snowblower had not been used for 4½ years; that the condition of the oil could have changed; that the machine could have been tampered with; and the fact that the noise could have prejudiced the jury.

■■ It is a well-recognized rule of law that the admissibility of demonstrative evidence is a matter within the trial court's discretion and that a court's ruling thereon will not be reversed in the absence of a clear showing of abuse. *Eizerman v. Behn* (1956), 9 Ill.App.2d 263, 277, 132 N.E.2d 788, 795.

Another basic rule concerning demonstrative evidence is that an ex-

periment is incompetent without a showing that the essential conditions are the same as those existing at the time of the accident. See *Thomas v. Chicago Transit Authority* (1969), 115 Ill.App.2d 476, 480, 253 N.E.2d 492, 494; *Handley v. Erb* (1941), 314 Ill.App. 207, 41 N.E.2d 222.

■■ In the case at bar, with the exception of Mr. Morris' testing the machine, the snowblower had not been used for 4½ years. Further, the demonstration was to take place inside the courtroom itself, the conditions of which are far removed from the conditions. of snow and cold that existed at the time of the accident. Under such circumstances, we conclude that the reasons cited by the trial court for not permitting the plaintiff to start and operate the snowblower are well founded, and we see no abuse of discretion on the trial court's part in refusing to permit such a demonstration.

Plaintiff also contends that the special interrogatory submitted by the defendant should not have been submitted and that the answer thereto requires that the case be retried. The special interrogatory in question reads as follows:

"The jury is instructed to answer the following Interrogatory, 'Yes' or 'No'.

At the time of, or immediately before the incident in question, did the plaintiff knowingly operate the snowblower in a manner that he knew was dangerous?"

The jury answered the special interrogatory in the negative.

We see no reversible error in submitting the special interrogatory to the jury and do not feel that the negative answer thereto requires this case to be retried. Section 65 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 65) provides in pertinent part:

"* * * When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly."

In explaining section 65 of the Civil Practice Act, *Cohen v. Sager* (1971), 2 Ill.App.3d 1018, 1019, 278 N.E.2d 453, 455, states the following:

"Judicial interpretation of this section [section 65] has established that statutory inconsistency exists only when the special findings are clearly and absolutely irreconcilable with the general verdict. (*Wicks v. Cuneo-Henneberry Co.* (1926), 319 Ill. 344, 150 N.E. 276; *Devine v. Federal Life Insurance Co.* (1911), 250 Ill. 203, 95 N.E. 174.) Where an examination of the jury findings reveals that a reasonable hypothesis consistent with the general verdict exists, the special findings cannot be said to be absolutely irreconcilable. (*Devine v. Federal Life Insurance Co., supra; Smith v. McCarthy* (1889), 33 Ill.App. 176.) Therefore, if the special findings do not

cover all the issues submitted to the jury and are not solely determinative of the case, a reasonable hypothesis consistent with the general verdict exists. In such a case, the general verdict is responsive to those issues not reached by the special findings. And because these issues remain as possible controlling factors in the jury's decision, the statute [section 65] does not apply."

■■ Clearly the jury's answer to the special interrogatory allows for a reasonable hypothesis consistent with the general verdict. The jury could have felt that although plaintiff did not assume the risk, he simply did not carry his burden of proof. The jury could just as easily have found that the snowblower was not defective.

■■ Plaintiff also alleges that the special interrogatory was inconsistent with the instructions tendered on assumption of risk and that this inconsistency confused the jurors. We do not regard such defect, however, as reversible error. The jury was fully and adequately instructed on the defense of assumption of risk and when these instructions are viewed together with all the evidence in the case, there is no indication that the jury was confused by the interrogatory to the detriment of the plaintiff. See *Bruske v. Arnold* (1969), 44 Ill.2d 132, 136—7, 254 N.E.2d 453, 456; *Havlovic v. Scilingo* (1972), 7 Ill.App.3d 918, 922, 289 N.E.2d 79, 82.

Plaintiff next contends that the expert witness for the defense, Mr. Truckenmiller, should not have been allowed to testify. The record indicates that the plaintiff was first informed of the existence of such a witness on September 25, 1972, the second day of trial, when the defendant informally notified plaintiff that he might have an expert witness testify. At this time plaintiff voiced no objection. Two days later, in the morning trial session of September 27, defendant informed the court and plaintiff that he would call Mr. Truckenmiller as a witness. The trial court then indicated that it would probably not permit Mr. Truckenmiller's testimony. At this time, plaintiff was given the opportunity to depose Mr. Truckenmiller, but refused. In the afternoon trial session of September 27, defendant filed a petition with the trial court asking that Mr. Truckenmiller be allowed to testify. The petition was argued that same afternoon, and later during the trial, the court allowed Mr. Truckenmiller to testify.

The record further reveals that the defendant did not contact Mr. Truckenmiller until September 21, 1972, and did not receive the contents of Mr. Truckenmiller's report until Saturday, September 23, 1972. It was on the following Monday that defendant informally told plaintiff that he might have an expert witness testify.

Whether or not a witness will be allowed to testify is within the sound discretion of the trial court. The question this court faces on appeal is

whether the trial court abused this discretion. Whether this court would have reached a different conclusion from that of the trial court is not controlling. *Trippel v. Lott* (1974), 19 Ill.App.3d 936, 942, 312 N.E.2d 369, 374.

It is evident from the record that the trial court heard considerable argument concerning whether or not Mr. Truckenmiller should have been allowed to testify. Before deciding to permit this witness to testify, the trial court heard an offer of proof outside of the presence of the jury. Furthermore, it was only after ascertaining that defense counsel did not know the contents of Mr. Truckenmiller's report until the trial was actually in progress, that the court permitted Mr. Truckenmiller to testify.

Moreover, the trial court did not permit Mr. Truckenmiller to testify concerning the allegedly defective clutch. This restriction on Mr. Truckenmiller's testimony plus the fact that plaintiff had already presented two expert witnesses of his own served to mitigate any possible prejudice to plaintiff's case.

■■ In light of all the above facts we do not feel the trial court abused its discretion in allowing Mr. Truckenmiller to testify.

Plaintiff next contends that the jury should not have been instructed on the affirmative defense of assumption of risk. In support of this contention plaintiff cites section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 43(4)), which reads in pertinent part as follows:

> "The facts constituting any affirmative defense * * * which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply."

■ It is true, as plaintiff argues, that the affirmative defense of assumption of risk is contained nowhere in defendant's amended answer to plaintiff's amended complaint. However, there were numerous times during the course of trial where the defendant brought up the defense of assumption of risk and plaintiff did not object. During the conference on jury instructions plaintiff voiced no objection to the tendering of the instructions on assumption of risk on the grounds that they were not pleaded. In addition, plaintiff tendered his own instructions on assumption of risk. In light of these facts it was not error to instruct the jury on assumption of risk. See *Hurst v. Papierz* (1970), 129 Ill.App.2d 117, 262 N.E.2d 773.

The record reveals that the jury was given three separate instructions on assumption of risk, one each by the court, the defendant and the plaintiff. Plaintiff contends that the instructions tendered by the court and defendant are inaccurate and inconsistent statements of law and hopelessly confused the jury. Plaintiff argues that these instructions are

inaccurate because they indicate that the standard to be used in judging plaintiff's conduct is that of a reasonable man. Plaintiff further contends that these instructions are inaccurate because they both mention proximate cause. We have examined these instructions and conclude that each instruction adequately reflects that the standard to be used in judging plaintiff's conduct is a subjective standard based upon plaintiff's understanding, knowledge and experience as opposed to that of the reasonable man. It is true that the court's instruction on assumption of risk uses the words "knew or should have known," and that this language normally implies a reasonable man standard. However, the second paragraph of the court's instruction, and both the instructions of the defendant and plaintiff, make it adequately clear that the standard to be used is a subjective standard, based upon this particular plaintiff's understanding, knowledge and experience.

Furthermore, we see nothing prejudicial to the plaintiff or confusing to the jury in including the element of proximate cause in the instructions on assumption of risk.

We find no inconsistency or inaccuracy in the instructions on assumption of risk which would constitute reversible error. This is especially true because plaintiff tendered his own instruction on assumption of risk which would serve to clarify anything confusing in the instructions of the court and defendant.

■■■ As stated in *Hulke v. International Manufacturing Co.* (1957), 14 Ill.App.2d 5, 52, 142 N.E.2d 717, 742:

> "The proper approach in considering instructions is not whether each individual instruction is mechanically correct so as not to be subject to some technical objection, but whether or not the instructions when considered as a whole were sufficiently clear so as not to mislead the jury."

We feel that the instructions on assumption of risk when considered as a whole properly reflect the following standard set out in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill.2d 418, 426, 261 N.E.2d 305, 309:

> "* * * a plaintiff who knows a product is in a dangerous condition and proceeds in disregard of this known danger (often termed 'assumption of risk') may not recover for resulting injuries."

We feel that the tendered instructions in their totality adequately reflect this standard.

Plaintiff further contends that the jury should not have been instructed on assumption of risk because there was not a scintilla of evidence that plaintiff was aware of the alleged defect, *i.e.*, the defectively designed clutch. Assuming, arguendo, that plaintiff is correct in the above con-

tention, we fail to see how the tendering of the instructions on assumption of risk operated to the prejudice of plaintiff. As stated previously, we find no misrepresentation of the law as stated in the instructions. Plaintiff, himself, tendered his own instruction on assumption of risk. Furthermore, the jury answered in the negative the special interrogatory directed at assumption of risk, thereby further deleting any allegedly prejudicial impact of the instructions tendered on assumption of risk.

In the case at bar, we see nothing which is cause for reversible error. The trial court accurately instructed the jury concerning what plaintiff had to prove to be successful in his products liability case. The jury returned a verdict for defendant and that verdict is adequately supported in fact and in law.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

McNAMARA and MEJDA, JJ., concur.