LADDY A. CIBOROWSKI, Plaintiff-Appellee, *v.* PHILIP DRESSLER & ASSOCIATES *et al.*, Defendants.—(Gold Seal Builders, Inc., Defendant-Appellant and Third-Party Plaintiff-Appellee, *v.* James Mansfield & Sons, Inc., Third-Party Defendant-Appellant.)

First District (2nd Division)   No. 81—1098

Opinion filed November 30, 1982.—Rehearing denied January 11, 1983.

STAMOS, P.J., concurring in part and dissenting in part.

Ruff, Weidenaar & Reidy, Ltd., of Chicago, for appellant Gold Seal Builders, Inc.

Crooks & Gilligan, Ltd., of Chicago, for appellant James Mansfield & Sons, Inc.

William J. Harte, Ltd. and Wiedner & McAuliffe, both of Chicago, for appellee.

JUSTICE DOWNING delivered the opinion of the court:
Laddy Ciborowski brought this action against Philip Dressler &

Associates (Dressler) and Gold Seal Builders, Inc. (Gold Seal), under the Structural Work Act for personal injuries he received while working on a roof under construction. Dressler was the owner-contractor of the project and Gold Seal was the general contractor. Dressler and Gold Seal filed separate third-party actions against James Mansfield & Sons, Inc. (Mansfield), who was plaintiff's employer, based on implied indemnity. Dressler also filed a counterclaim against Gold Seal for indemnity.

Jury verdicts were returned in favor of plaintiff against Gold Seal in the amount of $600,000, and in favor of third-party plaintiff Gold Seal against third-party defendant Mansfield for indemnity. Dressler was found not liable to plaintiff. In addition, the jury answered in the affirmative a special interrogatory asking whether Gold Seal was guilty of major fault. Judgment was entered on the general verdict. Gold Seal appeals, contending the trial court erred in denying its motion for judgment notwithstanding the verdict, denying its motion for a new trial, and denying its motion for a remittitur. Mansfield appeals, contending that the general verdict against it should be set aside because of the jury's answer to the special interrogatory.

The facts surrounding plaintiff's injuries are not critical to this appeal and will be recited only briefly. On August 7, 1974, plaintiff was working on the roof of a tennis club under construction in Glen Ellyn, Illinois. The roof, which is about 20 feet off the ground at the edges, has a rise of four inches for every 12 inches of roofing. Part of this roofing consisted of corrugated steel sheets which were placed on the structural members. At about 7:15 a.m. on August 7, plaintiff slid from near the peak of the building and fell to the ground. He asserted that oil on the sheets caused him to slip. Plaintiff, who was 29 years old at the time, sustained extensive injuries from the fall, including two fractured vertebrae and sciatic nerve damage. He underwent surgery on his hip and back for the placement of metal supports and further surgery to remove the supports and to fuse spinal members. There was conflicting testimony as to whether plaintiff would ever be able to return to work.

The posture of the parties is critical, particularly with respect to Mansfield's appeal. Dressler entered into a number of contracts to build a tennis facility. This facility was to consist of an exterior steel building with an interior "core" building. Gold Seal was retained as the general contractor for the exterior building. Gold Seal then subcontracted the roofing for the exterior building to Mansfield. Plaintiff was an employee of Mansfield. Gold Seal's representative at the construction site was Edward Jaster, who was superintendent of the pro-

ject. His duties were to see that the workmen were present and had adequate materials. He did not instruct the workmen on how they should perform their work. Dressler's foreman admitted that he had the duty to see that the work of all the subcontractors was done properly. Jaster was at the site three or four days per week spending 1½ to 2½ hours on each visit. He was not at the construction site on the morning of the accident but was there the previous day. He testified that on the day prior to the accident he observed the presence of "chicken ladders" (ladders hung from the roof), "toe boards" (boards nailed vertically at the eave line), and "life lines" (ropes dangling from the roof) on the building. These safety measures were denied by plaintiff and four other witnesses.

Mansfield's foreman at the site was Robert Dimock. Any complaints regarding the condition of the roof were to be directed to Dimock or the other Mansfield supervisor. There was testimony that Mansfield's employees informed Dimock that the roof was slippery. Jaster testified that these complaints were not communicated to him or anyone else at Gold Seal. While Dimock testified that it was only after plaintiff's accident that he (Dimock) learned of the oil on the roofing sheets, other witnesses testified they had informed Dimock earlier. During cross-examination, Dimock admitted discussing the problem of oil on the roofing panels with Jaster prior to plaintiff's accident. Dimock had safety equipment installed on the roof after the accident. Gold Seal's contract with Mansfield specifically provided that Mansfield assumed sole responsibility for the safety of its employees and would take all necessary measures to prevent injuries to its employees.

Gold Seal's first contention on appeal is that its motion for judgment *n.o.v.* should have been granted by the trial court. It asserts that plaintiff failed to present sufficient evidence that Gold Seal knew or should have known that safety devices were necessary on the roof being constructed. In particular, Gold Seal argues that there was no evidence that Jaster or anyone else connected with Gold Seal was aware of the oil on the roofing sheets or had an opportunity to learn of the slippery condition on the roof. Its position is that Mansfield was completely responsible for the condition of the roof and had exclusive control over the roofing work.

■ Judgments *n.o.v.* are proper only in those cases where all the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) The issue before us is

therefore whether the trial court properly applied the *Pedrick* standard when it denied Gold Seal's motion for judgment *n.o.v.* A review of the record reveals that the trial court acted within its discretion when it denied the motion. There was ample evidence that Gold Seal knew, or in the exercise of ordinary care should have known, that the condition of the roof necessitated safety devices and that it failed to provide such devices.

Gold Seal was the general contractor for the outer shell of the structure. Its superintendent, Edward Jaster, had the responsibility of inspecting the work of subcontractors such as Mansfield and had the authority to stop the work with three days notice for unsafe practices by those subcontractors. Jaster inspected the subject building three or four times a week for 1½ to 2½ hours each time. He also inspected the roofing materials that were delivered to the site and climbed onto the roof a number of times to inspect the sheeting and insulation being installed. Although Jaster and Dimock testified that ladders and supports were in place prior to the accident, plaintiff and four other witnesses denied the existence of these or any other safety devices. Additionally, Dimock admitted during cross-examination that he informed Jaster of the oily condition of the roofing sheets prior to the accident. There was also expert testimony from a consulting engineer that the general rule is that if safety precautions are not provided by the employer they are the responsibility of the general contractor. In view of this evidence, we find that the trial court properly applied the *Pedrick* standard when it denied Gold Seal's motion for judgment *n.o.v.*

■ Gold Seal's next contention is that its motion for a new trial should have been granted by the trial court. The standard of review of a trial court's denial of a motion for a new trial is whether the jury's verdict was against the manifest weight of the evidence. (See *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 439, 359 N.E.2d 1078.) Our analysis concerning the trial court's denial of Gold Seal's motion for judgment *n.o.v.* is applicable here. In light of the evidence that Gold Seal knew or should have known of the need for safety equipment on the roof, we do not believe the jury's findings in this regard were against the manifest weight of the evidence.

■ It is also claimed by Gold Seal that the trial court should not have permitted plaintiff's attorney to comment on Gold Seal's failure to call as a witness a doctor it engaged to examine plaintiff. Plaintiff's attorney asked the jury to infer that the doctor was not called by Gold Seal because his testimony would have been adverse to its position. Gold Seal's motion *in limine* to bar such comments was de-

nied. It claims that the witness was not under its control and, therefore, these comments and the submission to the jury of Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971) (hereinafter cited as IPI Civil)—requiring an adverse inference for failing to call a witness in certain instances—were improper. (See *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 318-19, 367 N.E.2d 472.) In *Biel v. Wolff* (1970), 126 Ill. App. 2d 209, 223-24, 261 N.E.2d 474, *appeal denied* (1970), 44 Ill. 2d 583, this court quoted an earlier Illinois opinion quoting McCormick, Evidence sec. 249, at 533-34 (1954), as follows:

> " 'When it would be natural under the circumstances for a party to call a particular witness *** his adversary may use this failure as the basis for invoking an adverse inference ***.
>
> Most of the controversy arises in respect to the failure to call a witness. It is generally agreed that when a potential witness is available, and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable.
>
> It is often said that if the witness is "equally accessible" to both parties, no inference springs from the failure of either to call him. This can hardly be accurate, as the inference is frequently allowed when the witness could easily be called or subpenaed by either party. What is probably meant is that when so far as appears the witness would be as likely to be favorable to one party as the other, there will be no inference. But even here, it seems that equality of favor is nearly always debatable, and that though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary.' "

We believe this logic to be fully applicable to the instant case. Despite the fact that plaintiff could have subpoenaed the witness, that witness was hired by Gold Seal with the intention of having him testify on Gold Seal's behalf. Under the circumstances before us, we find that for purposes of testifying the witness was under Gold Seal's control. That plaintiff's attorney commented on the failure to call this witness was not reversible error. Nor was it reversible error for the trial court to submit IPI Civil No. 5.01 to the jury. See *Leming v. Oltman* (1967), 87 Ill. App. 2d 97, 104-06, 231 N.E.2d 621, *appeal denied* (1968), 37 Ill. 2d 627.

■ Gold Seal next contends that the trial court erred when it

refused to instruct the jury that its award to plaintiff would not be taxable. The recent case of *Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920, is dispositive. There the court acknowledged that the law in Illinois is that the income tax jury instruction is not required. (104 Ill. App. 3d 257, 262.) We see no reason to deviate from this position.

■ Gold Seal's final contention is that the damages awarded by the jury were excessive and unsupported by the evidence and that the trial court erred in denying Gold Seal's motion for a remittitur. It specifically argues that the trial court should not have given jury instructions which, among other things, required the jury to compute and award plaintiff the present value of earnings reasonably certain to be lost in the future. (See IPI Civil Nos. 30.01, 34.04.) Gold Seal claims that there was no evidence as to what amount of earnings, if any, would be reasonably certain to be lost in the future and that the jury's award was based solely on the statements of plaintiff's attorney during closing argument.

We note at the outset that the instructions given did not require the jury to make any award. The instructions merely informed the jury that if plaintiff prevailed on the liability, he could be compensated for certain elements of damage if the jury determined that those elements were proved by the evidence. The jurors were also informed that they were to decide if the various elements of damage, such as loss of future earnings, were proved. We also note that counsel for Gold Seal presented no evidence on the issue of damages.

A review of the record reveals nothing to indicate that the jury award was based on passion or prejudice. In addition to the cash value of earnings reasonably certain to be lost in the future, evidence was presented on five other elements of damage: the nature, extent and duration of the injury; disability and disfigurement; pain and suffering; past wage loss; and medical expenses. The issue before us is whether the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*Barango v. E.L. Hedstrom Coal Co.* (1957), 12 Ill. App. 2d 118, 138, 138 N.E.2d 829, *appeal denied* (1957), 10 Ill. 2d 631.) Considering the evidence presented at trial showing the severity of plaintiff's injuries, and the deference properly accorded to the discretion of the jury and to the trial judge in denying the remittitur (see *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453, 158 N.E.2d 63, *cert. denied* (1959), 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256), we are convinced that the amount of the verdict is within the limits of fair and reasonable compensation. The trial court did not err in deny-

ing Gold Seal's motion for a remittitur. The portion of the judgment finding in favor of plaintiff against Gold Seal in the amount of $600,000 is affirmed.

Mansfield's basic contention on appeal is that judgment should not have been entered on the general verdict against it because the jury determined, as expressed in the special interrogatory, that Gold Seal was guilty of major fault. Gold Seal argues that the jury found it guilty of major fault only in relation to Dressler's fault, not in relation to Mansfield's fault.

If the fault of the indemnitee is primary, active, or major, then he is not entitled to indemnity regardless of the fault of the indemnitor. (See *Carver v. Grossman* (1973), 55 Ill. 2d 507, 514, 305 N.E.2d 161; *Doerge v. Wabash R.R. Co.* (1972), 4 Ill. App. 3d 914, 917-18, 282 N.E.2d 226, *appeal denied* (1972), 52 Ill. 2d 594.) The jury in the instant case was given three separate instructions defining major fault. Dressler offered one as to Dressler's counterclaim against Gold Seal. Dressler also offered one related to its third-party claim against Mansfield. Gold Seal offered one as to its third-party claim for indemnity against Mansfield. All three instructions followed IPI Civil No. 500.22. The instruction offered by Gold Seal as to its claim against Mansfield read:

> "When I say that Gold Seal Builder's, Inc. claims that James Mansfield & Sons, Inc.'s conduct was the 'major fault,' I mean they claim James Mansfield & Sons, Inc.'s conduct was the primary and significant cause of Laddy A. Ciborowski's injury *when compared with that of Gold Seal Builders, Inc.* When I say that Gold Seal Builders, Inc. claims that they were 'free from major fault,' I mean they claim that their fault was insignificant *when compared with that of James Mansfield & Sons, Inc.* because it was secondary, technical or minor." (Emphasis added.)

The two special interrogatories tendered to the jury read:

> "Was the Defendant-Third Party Plaintiff Phil Dressler & Associates, guilty of major fault which was a proximate cause of the Plaintiff's injuries and damages?"
> "Was the Defendant-Third Party Plaintiff Gold Seal Builders, Inc., guilty of major fault which was a proximate cause of the Plaintiff's injuries and damages?"

At the instruction conference, Gold Seal's attorney said:

> "Judge on the Gold Seal 10, it is on the way over. It is a special interrogatory of major versus minor fault which will be in the same form as (Mansfield's). If I may I will hand this to the

court when it comes in.

The Court: (Referring to Gold Seal's Instructions No. 1—10) Those instructions will be given."

However, our search of the record indicates Gold Seal did not submit its form of a special interrogatory.

The jury answered negatively as to the Dressler major fault interrogatory and affirmatively as to Gold Seal. It is Mansfield's contention that because the jury answered the second interrogatory in the affirmative, the general verdict in favor of Gold Seal and against Mansfield cannot stand.

Section 65 of the Illinois Civil Practice Act provides that "[w]hen the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly." (Ill. Rev. Stat. 1979, ch. 110, par. 65.)[1] The key inquiry, therefore, is whether the special finding of fact, *i.e.*, the answer to the special interrogatory, is inconsistent with the general verdict. If it is, and the special finding is not against the manifest weight of the evidence, judgment should be entered on the special finding rather than on the general verdict. (See *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 265-66, 226 N.E.2d 16; *Houston v. Leyden Motor Coach Co.* (1968), 102 Ill. App. 2d 348, 351-53, 243 N.E.2d 293.) The basis for this rule is that a jury is thought to more clearly understand a particularized special interrogatory than a composite of all the questions in a case. 37 Ill. 2d 263, 266.

■ We note, however, that in determining whether the special findings are inconsistent with the general verdict so that the latter must be controlled by the former, the evidence itself should not be considered. (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 350, 150 N.E. 276.) "All reasonable presumptions will be entertained in favor of the general verdict, while nothing will be presumed in aid of the special findings of fact." 319 Ill. 344, 350.

■ This court explained section 65 of the Civil Practice Act in *Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 278 N.E.2d 453, where we stated:

"Judicial interpretation of this section has established that statutory inconsistency exists only when the special findings are clearly and absolutely irreconcilable with the general verdict. (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 150 N.E. 276; *Devine v. Federal Life Insurance Co.* (1911), 250 Ill. 203,

---

[1]Effective July 1, 1982, section 2—1108 of the new Code of Civil Procedure superseded section 65 without change of substance.

95 N.E. 174.) Where an examination of the jury findings reveals that a reasonable hypothesis consistent with the general verdict exists, the special findings cannot be said to be absolutely irreconcilable. (*Devine v. Federal Life Insurance Co.*, supra; *Smith v. McCarthy* (1889), 33 Ill. App. 176.) Therefore, if the special findings do not cover all the issues submitted to the jury and are not solely determinative of the case, a reasonable hypothesis consistent with the general verdict exists. In such a case, the general verdict is responsive to those issues not reached by the special findings. And because these issues remain as possible controlling factors in the jury's decision, the statute does not apply." 2 Ill. App. 3d 1018, 1019; see also *Bittner v. Wheel Horse Products, Inc.* (1975), 28 Ill. App. 3d 44, 49-50, 328 N.E.2d 160.

In essence, the issue before us is whether the special finding (as expressed in the special interrogatory) is clearly and absolutely irreconcilable with the general verdict. In other words, does a reasonable hypothesis exist which is consistent with the general verdict in favor of Gold Seal and against Mansfield.

A review of the record convinces us that such a reasonable hypothesis does not exist. As to the plaintiff's basic case, the jury found Gold Seal liable and Dressler not guilty. As to the third-party action, both Gold Seal and Dressler sued Mansfield on the theory of "major-minor" fault. The jury found Dressler not guilty of major fault and found Gold Seal guilty of major fault which was the proximate cause of the plaintiff's injuries and damages.

Gold Seal now complains that the special interrogatory might have created confusion in the minds of the jury. If there was confusion, Gold Seal bears the responsibility for taking no action to correct it before the jury commenced its deliberations. Gold Seal tendered an instruction on the third-party claim against Mansfield but failed to present to the court a suggested version of the special interrogatory. Gold Seal should have set forth with specificity the nature of its objection to the special interrogatory and tendered a proper instruction. (*Cf. Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 387, 385 N.E.2d 664.) From our review of the instructions, we cannot say that the jury was misled. In fact, as to Gold Seal's third-party action against Mansfield, the jury was instructed that Gold Seal had the burden of proving that it was free from major fault.

The answer to a special interrogatory may not be set aside by the trial court unless it is contrary to the manifest weight of the evidence. (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1085, 401 N.E.2d

1145.) From our review of the record, we are satisfied that the answer to the special interrogatory is supported by the evidence. We, therefore, believe the trial court was in error in setting aside the special interrogatory. Based upon the response to the special interrogatory, the trial court should have rendered judgment on Gold Seal's third-party claim in favor of Mansfield (pursuant to section 65). Accordingly, as to the third-party claim, the judgment in favor of Gold Seal against Mansfield is reversed and the cause is remanded with direction to enter judgment in favor of Mansfield against Gold Seal.

For the reason stated herein, plaintiff's judgment against Gold Seal is affirmed, and Gold Seal's judgment against Mansfield is reversed and remanded.

PERLIN, J., concurs.

PRESIDING JUSTICE STAMOS concurring in part and dissenting in part:

I dissent only from that portion of the majority's opinion which reverses Gold Seal's verdict against Mansfield. I believe that a reasonable hypothesis that would reconcile the answer to the special interrogatory with the general verdict exists, and that the general verdict should be allowed to stand.

As noted by the majority, the fault of a party seeking indemnity is measured in comparison to the fault of other parties. The special interrogatory finding Gold Seal guilty of major fault does not specifically state with which party Gold Seal's fault was being compared. The jury might have been comparing Gold Seal's fault with that of Mansfield. It is also quite possible that the jury was measuring Gold Seal's fault in comparison with Dressler's fault. A number of factors convince me that it is a reasonable hypothesis that the jury was comparing the relative fault of Gold Seal and Dressler when they answered the special interrogatory finding Gold Seal guilty of major fault. The jury was specifically instructed that in order to return a general verdict for Gold Seal against Mansfield, they had to find that Gold Seal was free from major fault when compared with the fault of Mansfield. Additionally, the jury had found in favor of Dressler and against Gold Seal in the cross-complaint action. This finding is totally consistent with a finding that Gold Seal was guilty of major fault only in relation to Dressler.

In this case, the jury was faced with a trial involving four distinct causes of action, three of which required the jury to compare the fault

of various parties. The jury was instructed to compare the fault of Gold Seal with the fault of both Dressler and Mansfield. The majority's holding rests on the assumption that the jury understood the special interrogatory to refer to the third-party action between Gold Seal and Mansfield only, rather than to any other facet of the case. The fact that the special interrogatory refers to Gold Seal as "third-party plaintiff" supports the view that the interrogatory refers to Gold Seal's third-party action by its very terms. However, I think that it is plausible to assume that the jury paid little attention to the technical term "third-party plaintiff" in the interrogatory. The technical designations of the parties were used sparingly in the presence of the jurors. The jury was instructed extensively on the posture of the parties in the litigation without the use of the terms "third-party plaintiff," "third-party defendant," "cross-plaintiff," or "cross-defendant." It is also significant that the jury was presented with an identically worded interrogatory requesting a finding of whether Dressler was guilty of major fault. It is reasonable to think that the jury, because of the symmetry of the interrogatories, assumed that it was being asked to compare the fault of Dressler and Gold Seal relative to the claim between those parties despite the use of the term "third-party plaintiff" in both interrogatories. In its general verdict, the jury absolved Dressler of all fault, found that Gold Seal was liable to the plaintiff, but found that Gold Seal was entitled to indemnity from Mansfield. The verdict and the answers to the special interrogatories are consistent with the view that the jury constructed a hierarchy of fault, with Gold Seal being more at fault than Dressler but qualitatively less at fault than Mansfield. Therefore, the jury could well have found that Gold Seal was guilty of major fault as compared with the innocent Dressler, but was still entitled to reimbursement from Mansfield. In view of the rule that "[a]ll reasonable presumptions will be entertained in favor of the general verdict, while nothing will be presumed in aid of special findings of fact" (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 350, 150 N.E. 276), I find that the use of the technical term "third-party plaintiff" in the special interrogatory does not make it unreasonable to think that the jury was comparing the fault of Gold Seal with that of Dressler, and that therefore the affirmative answer to the special interrogatory can be reconciled with the general verdict.

The majority cites *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664, in support of its view that Gold Seal cannot rely on any ambiguity in the special interrogatory on appeal because it did not object to or attempt to clarify the special interrogatory at trial. In *Saldana*, the trial court presented the jury with a special interroga-

tory on its own motion. Our supreme court held that the question of the sufficiency of the interrogatory was not preserved for review because the party raising the issue on appeal had neither made a specific objection to the content of the interrogatory nor tendered an alternative interrogatory. (74 Ill. 2d 379, 387.) In the instant case, the proponent of the interrogatory contends that the trial court erred in finding that the interrogatory was too ambiguous to be allowed to control the general verdict. Although Gold Seal is, perhaps, the beneficiary of that ambiguity, I would hold that it is incumbent upon the party who wishes to have the answer to a special interrogatory control the general verdict to draft the interrogatory with enough specificity to achieve the desired result. Therefore, I believe that Gold Seal's failure to clarify the interrogatory that was offered by its adversary does not preclude Gold Seal from arguing on appeal that the trial court's finding that the interrogatory was ambiguous was correct.

For the reasons stated above, I do not believe that the special interrogatory finding Gold Seal guilty of major fault is clearly and absolutely irreconcilable with the general verdict requiring Mansfield to indemnify Gold Seal. Therefore, I would affirm.